George I. HAUK and Theresa R. Hauk,
Plaintiffs-Appellants,

v.

The FIRST NATIONAL BANK OF ST.
CHARLES, a Banking Corporation,
Defendant-Respondent.

No. 48204.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 7, 1984.

Melvin D. Benitz, St. Charles, for plaintiffs-appellants.

Morris E. Stokes, St. Charles, for defendant-respondent.

SMITH, Presiding Judge.

Plaintiffs, George and Theresa Hauk, appeal from a judgment against them in a court-tried case on their claim for breach of contract and from a judgment in favor of defendant, First National Bank of St. Charles, on its counterclaim. We reverse both judgments.

Plaintiffs were the holders of a note and first deed of trust on property owned by Russell Williams. The bank was the holder of second and third deeds of trust on the same property. On September 24, 1982, the bank foreclosed its deeds of trust and purchased the property at foreclosure sale. Payments on plaintiffs' note were in arrears at the time of foreclosure. Various discussions occurred between the bank and plaintiffs to effectuate a pay-off of the note held by plaintiffs and release of their first deed of trust. Plaintiffs were reluctant to accept prepayment for tax reasons. They offered to accept prepayment on the basis of receiving from $11,000 to $15,000 more than the $58,000 plus due for principal and earned interest. The bank demurred to this arrangement and offered, through plaintiffs' attorney, the amount of principal and interest due as of September 28, 1982. That this offer was actually communicated to plaintiffs is not established by the record, nor does the record show this offer was communicated as a specified amount of money rather than generally as principal and interest due.

The note contained the following pertinent provisions:

"... payable in monthly installments of $872.92 (each of said payments to be first applied to the interest and the remainder applied to the principal) on the 6th day of each month thereafter ..."[1]

---

1. The original note executed in 1970 provided for payments of $945.33 monthly on the 30th of each month. The note was amended in 1981, after execution of the bank's second and third deeds of trust, to increase the interest rate and change the monthly payments and date of payment. The amended note was not recorded. The bank treated the amended note as the operative one as did the trial court. There was evidence that the amended note was prepared for Mr. Williams by the law firm which represented the bank and which contained a member of its board of directors. That law firm withdrew from this litigation upon request of plaintiffs' attorney. Mr. Hauk testified that the board member advised him the note was proper, did not need to be recorded and that "everything is fine." The bank admitted knowledge of the amended note shortly after its execution. We treat the amended note as the operative document.

"The makers hereof reserve the right to mature and prepay any number of like installments on any installment due date, it being understood, however, that installments so prepaid shall be considered as prepaid in the reverse order of their maturity, that is to say, the last maturing installment shall be paid first." (This prepayment provision applied to both the original and amended notes).

On October 13, 1982, counsel for the bank wrote directly to plaintiffs (at their home in Dallas, Texas) with copies to the bank president and plaintiffs' counsel. The letter contained the following:

"The First National Bank recently was compelled to foreclose on a deed of trust that it had on certain property of Russell Williams, upon which you also had a deed of trust. The First National Bank did therefore tender to you $68,341.98 which was the amount due on your note according to your attorney Mr. Mel Benitz. For some reason, you declined to accept this tender.

"I wish to inform you that this money is available to you at any time at the First National Bank that you should elect to take it. You have only to contact Mr. Tom Boschert, President of the Bank, to receive this payment, and of course, surrender your note and deed of trust and execute a deed of release. All of these await you at the First National Bank.

"Meanwhile, I would inform you that your note does, indeed, carry a prepayment privilege and I, frankly, do not believe that you have any choice but to accept payment ...."

Plaintiffs sent the following mailgram to the bank president, which was received at 12 noon on October 18:

"Accept tender on Russell Williams deal of $68,341.98 per letter from your attorney Claude Knight dated October 13, 1982.

"Will send note, deed of trust, and executed deed of release to Mel Benitz."

The following letter was sent on October 18 to Plaintiffs:

"Upon review of the foreclosure file on Russell Williams and my letter to you dated October 13, 1982, I discovered that an error had been made and the amount of tender incorrectly stated.

"In order to set the record straight the amount should read $58,341.98 which was the correct figure given to me by your attorney ...."

On October 22 plaintiffs and their attorney appeared at the bank and presented the note, deed of trust, and executed deed of release and demanded $68,341.98. The bank refused and this suit followed. Plaintiffs sought to recover the figure contained in the letter of October 13 on the basis that a contract existed between the parties based on that letter and plaintiffs' mailgram of October 18. The bank counterclaimed seeking a declaratory judgment that it was entitled to prepay the note, that it made full tender on September 28, and sought an order that plaintiffs deliver the note, deed of trust, and deed of release in return for $58,341.98. It also sought a statutory penalty of 10% for improper refusal to release. The trial court found for defendant on plaintiffs claim, and awarded defendant what it prayed in the counterclaim except for the statutory penalty.

The trial court's decision on plaintiffs' claim was based upon its legal conclusion that the offer in the letter of October 13 required acceptance by presentation at the bank of the listed documents and that the offer was withdrawn prior to such acceptance. We disagree.

The operative law is stated in *Daggett v. Kansas City Structural Steel Co.*, 334 Mo. 207, 65 S.W.2d 1036 (1933) [1–4]:

"Of course, if an offer calls for the performance of an act, and further provides, either expressly or by necessary implication, that acceptance shall be made by performance of the act, then the acceptance must be in the manner indicated in the offer. But where an offer calls for the performance of an act, and does not provide the manner of acceptance, we know of no reason why the other party could not accept the offer

and thus complete the contract by either performing the act called for in the offer, or by agreeing to perform it. The distinction between an offer which calls for a promise, and one which calls for the performance of an act, is that in the former, notice of acceptance is always essential, while in the latter such notice is not required if the act called for in the offer is performed, because performance of the act is an acceptance .... (Citations omitted) However, a holding that notice of acceptance is not essential where the act called for in the offer is performed, is not a holding that the offer could not be accepted by agreeing to perform the act called for in the offer."

The act called for in the letter of October 13 was the surrender of the note, deed of trust, and an executed deed of release. The letter does not provide that acceptance of the offer could be made only by such act. In fact it provides for acceptance by contacting "Mr. Tom Boschert, President of the Bank." Plaintiffs contacted Mr. Boschert by their mailgram and promised to perform the required act. Under the teaching of *Daggett, supra,* the promise to perform the required act was an acceptance of the offer made in the October 13 letter.[2] The trial court therefore erred in its conclusion of law that the subsequent letter of October 18 served to modify the offer of October 13 prior to acceptance by plaintiffs.

■ We turn now to defendant's contention that it is entitled to relief from the contract because of its unilateral mistake. In *Sheinbein v. First Boston Corporation,* 670 S.W.2d 872 (Mo.App.1984) we recognized that unilateral mistake could serve as an affirmative defense to an action in law for breach of contract. This defense becomes available if the accepting party knew or had reason to know that a material term expressed was erroneous because of a clerical mistake. Defendant bore the burden of establishing its affirmative defense. The

trial court made no finding of fact that plaintiffs knew or had reason to know that the offer as transmitted was in error. The only reference in the findings of fact to this knowledge was to Mr. Hauk's testimony "that he was unaware of the mistake and believed that the proposal contained in the letter of October 13, 1982, was an offer reflecting a change in attitude on the part of the bank." The trial court expressed no opinion on the credibility of this testimony. In its conclusions of law the trial court held: "The attempt of Plaintiffs to accept the mistaken payoff figure by mailgram on October 18, 1982, was not sufficient to create a contract to pay the mistaken sum because the purported acceptance did not meet the terms of the offer." This conclusion would indicate that the Court found no basis for utilization of the unilateral mistake defense.

Further, the record does not show that plaintiffs knew or had reason to know of the mistake. All of Mr. Hauk's dealings with the bank involved his insistence on receiving the principal, earned interest and some amount of unearned interest. This latter figure was set by Mr. Hauk at $15,000 or approximately one-half of his estimate of the total unearned interest. His position was based on his interpretation of the prepayment provision that it did not eliminate the obligation to pay the full amount of each installment but only accelerated when payment could be made. The amount referred to in the first paragraph of the letter as the "amount due on your note according to your attorney" was not a definite figure supplied by the attorney. Rather it was a listing of principal and earned interest due as of July 15, 1982, and a daily interest amount accruing. There is no evidence that plaintiffs knew what figures their attorney had supplied the bank or its lawyers. The evidence further does not demonstrate that plaintiffs were aware of what amount had previously been tendered to their attorney and refused or even

---

2. *See Hunt v. Jeffries,* 236 Mo.App. 476, 156 S.W.2d 23 (1941) for a similar fact situation to that found in *Daggett* where, however, only per-

formance of the act could serve as an acceptance. The terms of the offer distinguish the cases.

that a definite sum was in fact tendered. The bank's practice of dealing alternately with plaintiffs directly and then their attorney could well have prevented either from knowing precisely what the last offer consisted of, particularly in view of plaintiffs' distant residence.

■ While the term "had reason to know" has been used on occasion interchangeably with "should have known" the terms are not synonymous. *Fowler v. Park Corp.*, 673 S.W.2d 749 (Mo. banc 1984) [6]. The latter term signifies a duty upon a party to inquire whereas the former does not impose such a duty. Plaintiffs had no duty to inquire whether the figure in the October 13 letter was correct. It represented an offer of a lesser amount than plaintiffs had demanded and plaintiffs were justified in believing it represented a compromise by the bank. We find no evidence to support defendant's affirmative defense of unilateral mistake.

■ Defendant also contends that there was no consideration for the contract because the prepayment provision of the note gave it an absolute right to prepay the note for the amount of unpaid principal and earned interest. We need not make a legal determination of the meaning of the prepayment provision. We do note, however, that some question does exist as to whether a tender of earned interest through September 28 meets the requirement that prepayment occur on an "installment date" which is delineated as the "6th" of each month. *See Lowry v. Northwestern Savings & Loan Association*, 542 S.W.2d 546 (Mo.App.1976) [2–4]. It is also apparent that the language used in the note is less than crystal clear as to the amount required to be paid to prepay the note. The language utilized refers to advance payments of a full specified installment with the prepayment to be applied to the last payment due. It is at least arguable that such a provision serves to allow the debtor to shorten the time required to satisfy the note but does not reduce the total amount that must be paid. For a discussion of prepayment clauses as they affect both creditor and debtor *see Dugan v. Grzybowski*, 165 Conn. 173, 332 A.2d 97, 86 A.L.R.3d 591 (1973).

■ Those considerations aside the rule is that the compromise of a doubtful claim is good consideration for a contract. That, subsequently, one party is determined to have no right in law does not obviate the compromise. A claim as to which the doubt or dispute arises must be asserted honestly and in good faith. The party asserting it must have a reasonable belief in his ability to sustain it, although such belief may be due to an honest mistake. Only those disputed claims honestly and in good faith asserted, concerning which the parties may bona fide and reasonably disagree, will support a compromise. *Dickey v. Johnson*, 532 S.W.2d 487 (Mo.App.1975) [4]; *B.H. Tureen Hotels, Inc. v. Nachman & Co.*, 317 S.W.2d 422 (Mo.1958) [3, 4]; *Curry & Co. v. Hedrick*, 378 S.W.2d 522 (Mo.1964) [11–13].

The trial court in its conclusions of law stated: "Plaintiffs were in violation of the terms of the note in failing to accept the principal and interest due at the rate of 12½% per annum. The refusal to accept the full amount due on the note was in good faith but mistaken belief that the note did not permit prepayment, and no penalty should be assessed." While we pass no judgment on the correctness of the court's legal conclusion of plaintiffs' obligations under the note, the factual finding of good faith is binding upon us. Nor on the record before us do we disagree with that finding. The meaning of the prepayment provision is not free from doubt and plaintiffs interpretation thereof cannot be termed frivolous. The consideration was adequate.

In their brief plaintiffs have requested that judgment be entered on their claim for $68,341.98 and interest from October 22, 1982. This request does not correctly reflect the measure of damages for breach of the contract but rather seeks a recovery much like specific performance. In view of our conclusion in this case, however, the entry of such a decree rather than an

award of damages which would leave the note and deed of trust extant, can only inhere to the benefit of defendant. In order to conclude this litigation we will remand this cause with directions to the trial court to enter the judgment requested by plaintiffs ($68,341.98 and legal interest from October 22, 1982) upon consent of defendant, with the further order that upon satisfaction of said judgment plaintiffs surrender to defendant the note and deed of trust and an executed deed of release. If defendant withholds its consent, the trial court is directed to enter judgment for plaintiffs in the amount of $10,000 plus interest from October 22, 1982.

Cause reversed and remanded with directions on plaintiffs' claim. Judgment on defendant's counterclaim reversed.

SNYDER and SATZ, JJ., concur.