RONALD R. HOLLIGER, Judge.
 

 Chad Vulgamott appeals a judgment denying his request to enforce a claimed settlement of his lawsuit against a co-employee, Brent Perry, for injuries from an automobile accident and a further finding that the court lacked subject matter jurisdiction because of the exclusivity provisions of the Workers’ Compensation Act, Section 287.120.2, RSMo. (2000).
 
 [1]
 
 Although Vulgamott raises six points on appeal we need not address four of them because we find that the trial court did have subject matter jurisdiction over the alleged settlement and that the trial court erred in finding that no valid enforceable settlement agreement existed. Reversed and remanded.
 

 FACTS AND PROCEDURAL BACKGROUND
 

 Chad Vulgamott was a passenger in a vehicle driven by Brent Perry which was involved in a collision with another driver on May 25, 1994. Shelter Mutual Insur-anee Company insured Perry’s vehicle. At the time of the accident, Perry and Vulga-mott were fellow employees acting within the course and scope of their employment.
 

 On December 5, 1996, Vulgamott filed a lawsuit in Livingston County alleging negligence against Perry and the driver of the other vehicle seeking compensation for the injuries sustained in the car accident.
 
 [2]
 
 The case was eventually set for trial on May 21, 2001. Moments before trial was to begin, the parties told the court that they had reached a settlement agreement. The agreement provided that Perry’s liability insurance carrier, Shelter, would pay $25,000 plus the statutory court costs to Vulgamott, that Perry would confess a judgment for one million dollars, and that the format of the written settlement agreement would follow the format utilized in another case called
 
 Noland v. Welch.
 

 [3]
 

 It was the intent of the settlement that a bad faith claim would then be litigated against Shelter.
 

 Before the jury was discharged, a copy of the
 
 Noland v. Welch
 
 agreement was faxed to the Livingston County Courthouse and, in turn, faxed to Shelter’s in house counsel for approval. Shelter’s in house counsel approved the agreement and authorized Perry’s attorney to enter into the settlement agreement according to the aforementioned terms. The parties then informed the court that the case had been settled, a formal record was made concerning the agreement, and the jury was discharged.
 

 After making a record of the agreement in open court, the attorneys for Vulgamott and Perry went to an office to prepare a written version of the settlement agreement. A written version of the agreement
 
 *372
 
 was prepared and signed by the attorneys and then sent to Shelter for final approval and signature.
 

 Over the course of the next year, the parties communicated extensively about the language of the final version of the written agreement to no avail. Both Shelter
 
 [4]
 
 and Perry eventually filed motions to enforce the settlement agreement. Both argued that a valid and binding settlement agreement had been reached on May 21, 2001.
 

 Subsequently, attorneys for all parties agreed to meet on May 31, 2002, for the purpose of finalizing the written settlement agreement. Prior to that meeting the Missouri Supreme Court handed down its opinion in
 
 State ex. rel Taylor v. Wallace,
 
 73 S.W.Sd 620 (Mo. banc 2002), which Shelter believed divested the circuit court of jurisdiction over the subject matter of the
 
 Vulgamott v. Perry
 
 lawsuit giving exclusive subject matter jurisdiction to the Labor and Industrial Relations Board under Section 287.120.2.
 
 [5]
 

 At the May 31, 2002 meeting, Shelter’s counsel announced that it was no longer interested in pursuing a written version of the settlement agreement and took the position that Vulgamott had repudiated the settlement agreement by refusing to execute a written settlement contract.
 

 On June 3, 2002, Vulgamott filed a motion to enforce the settlement agreement he claimed was reached May 21, 2001. Now all parties had filed motions arguing that a valid settlement had been reached on May 21, 2001. Neither Perry nor Shelter filed suggestions in opposition to Vul-gamott’s motion to enforce the settlement agreement. Rather, both filed motions to dismiss Vulgamott’s action for lack of subject matter jurisdiction arguing that, per the
 
 Taylor
 
 decision, workers’ compensation law provided Vulgamott’s exclusive remedy.
 

 The circuit court heard arguments on the motions to dismiss and Vulgamott’s motion to enforce the settlement agreement on March 6, 2003. On August 22, 2003, the court entered its order granting Shelter’s and Perry’s motions to dismiss for lack of subject matter jurisdiction and, in the alternative, found that there was insufficient proof that any binding settlement agreement was agreed to by all parties on May 21, 2001. Vulgamott now appeals claiming, in part, that the trial court erred in refusing to enforce a valid enforceable settlement agreement reached by the parties on May 21, 2001.
 
 [6]
 

 We must first address, however, Vulga-mott’s point on appeal that the trial court erred in dismissing the case for lack of subject matter jurisdiction. Shelter claimed in its motion to dismiss, and the trial court agreed, that after the
 
 Taylor
 
 decision the trial court had no subject matter jurisdiction because
 
 Taylor
 
 had extended the employer’s immunity to co-employees unless there was a pleading and proof of the “something extra” in the conduct of the negligent co-employee.
 
 [7]
 

 
 *373
 
 Vulgamott contends on appeal that there are two aspects to this issue. First, he contends that he pled, or should have been allowed to plead by amended petition, the necessary “something extra.” Secondly, he contends that the trial court retained subject matter jurisdiction to enforce a settlement contract between the parties even though it no longer had jurisdiction over the underlying suit after Taylor. Because we agree that the trial court had jurisdiction to enforce the settlement agreement, we do not reach the first aspect described above.
 

 JURISDICTION
 

 Vulgamott argues that enforcement of a settlement agreement is a separate or collateral contract action from the underlying suit. Under Vulgamott’s theory, once a settlement agreement was reached, jurisdiction over the underlying suit was irrelevant because that suit had been suspended as a result of the parties on-the-record settlement agreement. Thus, Vulgamott avers, that after May 21, 2001, (the date of the alleged settlement agreement), all that remained of this suit was a contract action, and the circuit court had jurisdiction to enforce the settlement contract (if validly formed) even if the court no longer had jurisdiction over the underlying action.
 

 Conversely, Shelter argues that the circuit court never had subject matter jurisdiction over the original action because the Supreme Court didn’t change the law in its
 
 Taylor
 
 opinion but simply interpreted existing law. Shelter asserts that a lack of subject matter jurisdiction over Vulgamott’s original action means his original action is a nullity and never existed and, thus, any settlement pursuant to such an action is invalid. Shelter also argues that there was no consideration for the alleged settlement because there was no valid claim over which the trial court had jurisdiction. We disagree.
 

 Settlement agreements are a species of contract. “A motion to compel settlement adds to a pending action a collateral action for specific performance of the settlement agreement.”
 
 McKean v. St. Louis County,
 
 964 S.W.2d 470, 471 (Mo.App.1998) (court rejected argument that settlement could only be enforced by a separate action for that purpose). In
 
 Hauk v. First National Bank of St. Charles,
 
 680 S.W.2d 771 (Mo.App.1984), the bank had foreclosed under a second and third deed of trust property on which the Hauks held the first mortgage. The Hauks did not want to accept payment of the balance due of approximately $58,000 because of tax reasons instead asking for a premium for early payment and release.
 
 Id.
 
 at 772. The Hauks believed in good faith, but mistakenly, that them note did not allow prepayment. Subsequently the bank by letter offered to pay $68,000. The Hauks accepted but the bank then declined saying it had made a unilateral mistake in the amount. The Hauks sued on the settlement contract and the trial court found for the bank.
 
 Id.
 
 at 773. On appeal the bank argued that because there was no prohibition of prepayment that there was no consideration for its offer of $68,000 to discharge the note and deed of trust. The court of appeals reversed holding that “compromise of a doubtful claim is good consideration for a contract.”
 
 Id.
 
 at 775.
 
 [8]
 
 
 *374
 
 There is certainly no claim here that Vul-gamott’s claim against his co-employee for negligent operation of a motor vehicle was not brought in good faith as to the state of Missouri law before
 
 Taylor.
 
 In fact, Perry never raised a defense under the Workers’ Compensation Act until after
 
 Taylor
 
 was handed down.
 

 Shelter’s argument fails even if we consider the trial court to have lacked subject matter jurisdiction from the initial filing of Vulgamott’s suit. In
 
 Groh v. Groh,
 
 910 S.W.2d 747 (Mo.App.1995), this court vacated a decree of dissolution of marriage because the trial court lacked subject matter jurisdiction over the action
 
 [9]
 
 yet still found enforceable the partial settlement agreement entered into before the decree. We said “that the fact that the trial court lacked subject matter jurisdiction does not render the partial settlement agreement invalid.”
 
 Id.
 
 at 752. In part this was likely because both parties. had a legal interest in the property separate from the dissolution action. Similarly here, the parties had a legal interest in the claimed settlement contract separate from the original action.
 

 Finally, Shelter argues that this case is different because the settlement agreement calls for the court to enter a judgment pursuant to confession and that the trial court cannot enter a confession of judgment on a claim it has no jurisdiction over. Shelter cites no authority for this proposition and we could consider it abandoned.
 
 State v. Tilley,
 
 104 S.W.3d 814, 824 (Mo.App.2003). Regardless, we reject the conclusion because it fails to recognize the distinction between the original claim before the court and the separate contractual obligation, if any, created by the parties agreement.
 

 We find that the trial court had jurisdiction over the alleged settlement agreement.
 

 Was a Binding Settlement Agreement Reached?
 

 Alternatively, the trial court ruled that a binding and enforceable settlement agreement had not been reached on May 21, 2001. The court also found, however, that although Vulgamott had not expressly repudiated the agreement that was reached, he had sought to modify its terms. The court ruled that these attempts to modify the terms amounted to counter-offers and rejections of the prior offers resulting in no agreement being reached. Vulgamott claims that the trial court erred in finding that no settlement agreement existed.
 

 This court’s review of a court-tried case is governed by the standard enumerated in
 
 Murphy v. Carron,
 
 536 S.W.2d 30 (Mo. banc 1976);
 
 Gillham v. LaRue,
 
 136 S.W.3d 852 (Mo.App.2004). Under the
 
 Murphy v. Carron
 
 standard, the appellate court will affirm the judgment of the trial court unless there is no evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. 536 S.W.2d at 32. A party requesting specific performance of a settlement agreement has the burden of proving, by clear, convincing and satisfactory evidence, his claim for relief.
 
 Payne v. E & B Carpet Cleaning, Inc.,
 
 896 S.W.2d 650, 651 (Mo.App.1995).
 

 Vulgamott argues in point 4 of his appeal that a binding settlement agreement was reached on May 21, 2001, when the parties announced to the court, on the record, the settlement and its broad terms. Vulgamott seeks specific enforcement of the settlement agreement. In support of
 
 *375
 
 his position, Vulgamott points to the fact that all parties filed motions to enforce the May 21, 2001, settlement agreement.
 

 The trial court made extensive findings of fact and conclusions of law. In its findings of fact the trial court found, inter aha:
 

 A settlement agreement was reached between the parties at the Livingston County Courthouse on May 21, 2001.
 
 The transcript of proceedings being Plaintiffs Exhibit # 1, reflect [sic] settlement agreement required the Circuit Court to enter judgment in the amount of one million dollars against defendant Perry in the tort case in accordance with the confirmation of judgment made by defendant Perry as part of the settlement agreement. Additionally, Interve-nor Shelter Mutual Insurance Company was to pay $25,000 to Plaintiff plus statutory Court costs. A jury panel had been summoned and was waiting in the hallway as the agreement was reached, (emphasis added).
 

 Later that day on May 21, 2001, Plaintiffs attorney met at Defendant Perry’s attorney’s office to draw a proposed agreement to send to Intervenor Shelter Mutual Insurance Company for signature. Plaintiffs attorney modified the release language of paragraph 4. Inter-venor Shelter rejected the proposed change of language.
 

 Intervenor Shelter Mutual Insurance Company objected to the modification of paragraph 4 concerning the release language requested by Plaintiff. Interve-nor Shelter desired to enforce the agreement and filed a Motion to enforce Settlement relating to the agreement containing the original language forming the basis of the agreement and based upon language utilized in another case entitled
 
 Noland v. Welch.
 

 The court does not find that Plaintiff ever expressly repudiated the agreement reached in court but did attempt to modify it.
 

 The court also made conclusions of law, finding inter alia:
 

 The original tort case was a nullity (after Taylor v. Wallace) and any judgment entered thereon would be void ab initio; The court has no jurisdiction in an ancillary matter when the Court is without subject matter jurisdiction in the underlying tort case.
 

 In the alternative, if the court had jurisdiction over the ancillary issue of enforcement of the alleged settlement, there is insufficient proof that any binding settlement was agreed upon by all the parties. Under basic contract law, Plaintiffs attempts to modify the original agreement and Intervenor’s later offer amount to counter-offers and rejections of the prior proposed offers.
 

 Vulgamott argues first, that the finding that no enforceable settlement agreement was formed is not supported by the evidence and is against the overwhelming weight of the evidence. He also argues that the trial court’s conclusion of law was incorrect in opining that attempts to modify the original agreement and the exchange of offers and counter offers to modify the original agreement “amounted to a counter-offer and rejection of the prior proposed offers.”
 

 Shelter argues in response, that the agreement announced in open court on the day of trial was “preliminary,” “tentative,” and was essentially an agreement to agree if the parties could agree on something in writing at a later date. Shelter urges that no enforceable settlement was agreed upon because the parties were never successful in their intent to “memorialize the settlement in written form.” Shelter argues further that there was no “sufficient consideration” for the agreement and also that the proposal and rejection by Vulgamott of
 
 *376
 
 different versions of the settlement document not only constituted a rejection of Shelter’s proposed language but a repudiation of any original agreement if one existed. We will address the parties various arguments in turn.
 

 SUFFICIENCY OF CONSIDERATION
 

 At two different points Shelter asserts that either the consideration for any settlement agreement was not sufficient or that there was no consideration. Shelter cites no legal authority in connection with either argument. The assertions are contained in only one or two sentences on each occasion. The only further development of this argument is the statement that Perry would pay no monies to Vulgamott and there was to be no release of Perry by Vulgamott.
 

 Compromise of even a doubtful claim is sufficient consideration for a settlement agreement.
 
 Holt v. Jamieson,
 
 847 S.W.2d 194, 197 (Mo.App.1993). The mutual promises expressed to the court when the settlement was announced are sufficient consideration in a bi-lateral contract.
 
 Sumners v. Serv. Vending Co.,
 
 102 S.W.3d 37, 41 (Mo.App.2003). Those mutual promises both imposed new duties and liabilities on each party. Shelter points to no authority that the insured, rather than his insurer, must pay monetary consideration to the claimant. The alleged agreement did not fail from lack of consideration.
 

 LACK OF A WRITING
 

 Shelter makes numerous references to the fact that no written settlement was executed
 
 [10]
 
 and that the record made on the trial date indicates that the parties intended to enter into a written agreement. Again, there are no citations to authority that a writing was legally required for the agreement to be enforceable. To the contrary, a compromise settlement need not be in writing unless the subject matter is within the statute of frauds.
 
 Byrd v. Liesman,
 
 825 S.W.2d 38, 39 (Mo.App.1992). Nothing was expressed on the record before the court that the settlement was tentative, preliminary, or conditional.
 
 Collins v. Swope,
 
 605 S.W.2d 538, 540 (Mo.App.1980) (merely because parties stipulate they will reduce oral agreement to writing does not indicate intention that parties will require writing as condition precedent to being bound by the agreement). The record belies such an argument since the parties specifically mentioned the form of the agreement from another case, telephoned Shelter’s counsel and had him approve the form from the other case, and marked that form as an exhibit. Shelter’s argument undercuts itself by expressing the issue as the parties’ intent to “memorialize the agreement.” Any agreement entered into on the trial date does not lack enforceability just because it was not reduced to writing.
 

 WAS A BINDING AGREEMENT REACHED ON THE TRIAL DATE?
 

 Vulgamott argues that all of the essential terms of a valid compromise settlement agreement were announced on the record on the day of trial, May 21, 2001. In fact, the trial court found that there was such an agreement. Our review of the record supports that finding. A contract will be valid and enforceable even if some terms may be missing or left to be agreed upon as long as the essential terms are sufficiently definite to enable the court to give them exact meaning.
 
 Raskas Foods, Inc. v. Southwest Whey, Inc.,
 
 978 S.W.2d
 
 *377
 
 46, 50 (Mo.App.1998). The record of the settlement agreement made on the trial date was far more complete than is often the case. The parties offered the court the form of the agreement, specified the amount to be paid by Shelter immediately, and the amount of the subsequent judgment to be entered. Counsel for Perry stated:
 

 Well, the only other thing I’d add your honor, is obviously the agreement that’s been marked was for a different case so the amounts and the names a lot of those things are going to be different in the agreement for this case. But the principle of the agreement has been agreed to.
 

 The record even reflects that Shelter requested a modification of the form of the
 
 Noland v. Welch
 
 agreement and that Vulgamott agreed to that language change.
 

 The present case bears much similarity to another case where the contractual validity of a settlement agreement was at issue.
 
 Fair Mercantile Co. v. Union-May-Stern Co.,
 
 359 Mo. 385, 221 S.W.2d 751 (1949). In
 
 Fair Mercantile,
 
 the parties stipulated to an agreement in open court where a fixed settlement amount was agreed to and basically nothing else.
 
 Id.
 
 at 755. Subsequently, the plaintiffs refused to abide by the settlement agreement arguing, among other things, that the terms of the agreement were incomplete and thus the agreement was unenforceable.
 
 Id.
 
 The Missouri Supreme Court affirmed the circuit court’s enforcement of the settlement agreement and, in so ruling, held that an open court stipulation as to a settlement agreement “is a contract but made with more solemnity and with better protection to the rights of the parties than an ordinary contract made out of court.”
 
 Id.
 
 The Court held that the settlement contract was complete and enforceable because the essential terms were definite even though some terms were left to be performed or agreed to.
 

 Shelter points to an abundance of communication between the attorneys as evidence of no mutual assent, including a series of letters that took place between the attorneys after the in court stipulation. The bulk of the communications relate to all parties wrangling over various wordings of the May 21, 2001, agreement. Over the course of the year’s worth of correspondence, Shelter (the party now denying an agreement ever existed) consistently objected to any deviations from the
 
 Noland v. Welch
 
 format (the format agreed to in open court).
 

 None of the disputes between the attorneys about the language of the agreement appear to revolve around any essential term of the settlement or some essential element that was not covered in court on May 21, 2001. The amounts in issue remained undisputed, as does the format of the agreement. The written memorialization was the stumbling block the attorney’s could not overcome. A compromise settlement need not be in writing unless the subject matter is within statute of frauds,
 
 Liesman,
 
 825 S.W.2d at 39, and a contract will be enforceable as long as all essential terms are sufficiently definite to enable the court to give them exact meaning.
 
 Raskas,
 
 978 S.W.2d at 50. Here the essential terms are present and they need not to have been in writing to be enforceable. The trial court, therefore, erred in finding that the parties did not enter into a legally enforceable settlement agreement on May 21, 2001.
 

 Finally, Shelter appears to argue that the settlement agreement cannot be enforceable against Shelter because Shelter was not in court on the trial date. This argument necessarily implies that the attorney hired by the insurer to defend the insured does not have the authority to settle the case. Again, Shelter cites no legal authority for this proposi
 
 *378
 
 tion. The principal agent relationship between an insurer and the attorney hired by the insurer to defend an insured is a clearly established principle of insurance law. Regardless, Shelter’s express approval of the settlement by phone call pri- or to the stipulation in court precludes any need to discuss the agency relationship. The record reveals that Shelter gave express approval of the essential terms of the settlement agreement to the defense counsel that Shelter hired to represent Perry and that approval by Shelter was stated upon the record.
 

 DID SUBSEQUENT NEGOTIATIONS OR NEGOTIATION ATTEMPTS CONSTITUTE A REPUDIATION OF THE SETTLEMENT AGREEMENT OR OTHERWISE INVALIDATE THE AGREEMENT?
 

 In its next point on appeal Vulgamott contends that the trial court variously erred in its conclusion of law that offers, counter offers, and negotiations taking place after the settlement agreement was reached served to invalidate the agreement. He contends that this finding was not supported by the evidence, was against the weight of the evidence, and erroneously declares and applies the law.
 

 Shelter responds that there was no enforceable agreement based upon legal principles and authorities dealing with the effect of offers, counter offers and the principle of acceptance. Those principles and arguments have no application, however, if these parties previously entered into a binding settlement agreement, unless post agreement events would amount to a repudiation of the original agreement by Vulgamott who now seeks to enforce it. See
 
 Wooten v. DeMean,
 
 788 S.W.2d 522, 526 (Mo.App.1990) (“Mere requests to change the terms of a contract are not, in and of themselves, enough to constitute repudiation.”). Vulgamott points out that the trial court made a finding of fact that Vulgamott never “expressly repudiated the agreement reached in court, but did attempt to modify it.” Perhaps recognizing the principle stated above, that attempts to renegotiate or modify an agreement do not alone constitute repudiation, Shelter argues that the trial court was wrong and that Vulgamott did repudiate the agreement.
 

 A party to a contract repudiates that contract by manifesting, by words or conduct, a positive intention not to perform.
 
 Jetz Serv. Co. v.
 
 Botros,, 91 S.W.3d 157, 163 (Mo.App.2002). Shelter points to nothing in the record that would constitute an express verbal intention by Vulgamott not to perform the parties’ original agreement. Evidently, Shelter is arguing that Vulgamott’s conduct in the ensuing months after the original agreement expresses that intention. Conduct alone can constitute repudiation.
 
 Mar-Kay Plastics v. Alco Standard, Corp.,
 
 825 S.W.2d 381, 384 (Mo.App.1992). However, that conduct must manifest a positive intention not to perform.
 
 Id.
 
 We have reviewed the communications between the parties, both written and oral, and find nothing that indicates a positive intention not to perform the essential terms of the agreement originally presented to the trial court. We do not believe that disagreements as to the language used to memorialize the agreement or whether such language conformed to the intent of the parties when they reached the agreement is sufficient to find a repudiation of the parties original agreement. “A contract is the agreement ... parties [make] and not the writing which evidences the agreement.”
 
 Bailey v. Jamestown Sch. Dist. No. 11,
 
 77 S.W.2d 1017, 1020 (Mo.App.1934).
 

 The trial court correctly found that Vul-gamott did not expressly repudiate the agreement but incorrectly applied the law
 
 *379
 
 when it found that his requests to modify the memorialization of the contract left it unenforceable and invalid.
 

 The court’s judgment is reversed and the matter remanded for the trial court to enter such orders and or judgment as is necessary to complete the settlement agreement reached by the parties on May 21, 2001.
 

 THOMAS H. NEWTON, Presiding Judge, and HAROLD L. LOWENSTEIN, Judge, concur.
 

 [1]
 

 . All statutory references are to RSMo 2000 unless otherwise indicated.
 

 [2]
 

 . A settlement was reached with the other driver who has been dismissed from the case.
 

 [3]
 

 . Reference is apparently to
 
 State ex rel. (Welch) Tracy v. Dandurand,
 
 30 S.W.3d 831 (Mo. banc 2000).
 

 [4]
 

 . Shelter intervened as a party for this purpose.
 

 [5]
 

 . "The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee, his wife, her husband, parents, personal representatives, dependents, heirs or next kin, at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter.” Section 287.120.2.
 

 [6]
 

 . Vulgamott originally filed his appeal with the Supreme Court of Missouri raising a constitutional issue. The appeal was transferred to us by the Supreme Court after briefing but before argument.
 

 [7]
 

 . Most accurately,
 
 Taylor
 
 held that ordinary negligence in the operation of a motor vehicle was part of the employer's duty to provide a safe place to work and safe work appliances and was therefore not the "something extra”
 
 *373
 
 required by
 
 State ex rel. Badami v. Gaertner, 630
 
 S.W.2d
 
 175, 180
 
 (Mo.App. 1982) (en banc), necessary to avoid immunity for the co-employee.
 

 [8]
 

 .
 
 See also State ex rel St. Louis Shipbuilding & Steel Co.
 
 v.
 
 Smith,
 
 356 Mo. 25, 201 S.W.2d 153, 157-58 (1947), holding that where, at the time of a settlement, there was a difference of opinion about the validity of a tax assessment that the settlement could not be disturbed even though later it was found that no tax was due.
 

 [9]
 

 . Neither party was a resident of the state for more than 90 days preceding the action’s commencement.
 

 [10]
 

 . In fact, Vulgamott did sign one of Shelter's versions of the written settlement agreement nearly a year later but this argument by Shelter is different and that later signature does not enter into our consideration.