Gary TAGUE, Appellant,

v.

MISSOURI PRIVATE SECTOR INDI-
VIDUAL SELF–INSURERS GUAR-
ANTY CORPORATION, Respondent.

No. WD 65777.

Missouri Court of Appeals,
Western District.

March 21, 2006.

Jacqueline D. Ross, St. Joseph, MO, for Appellant.

Leland H. Corley, Kansas City, MO, for Respondent.

Before JAMES M. SMART, P.J., ROBERT G. ULRICH and LISA WHITE HARDWICK, JJ.

ROBERT G. ULRICH, Judge.

Gary Tague appeals the judgment granting the Missouri Private Sector Individual Self–Insurers Guaranty Corporation's (Guaranty Corporation)[1] Motion to Dismiss. The court dismissed with prejudice Mr. Tague's action to enforce a settlement agreement between him and Guaranty Corporation for lack of subject matter jurisdiction. In his sole point on appeal, Mr. Tague argues that an action to enforce a settlement agreement is separate from the underlying workers' compensation claim and that the circuit court does have subject matter jurisdiction. Even if everything Mr. Tague alleges as fact regarding the settlement agreement were true, which is not determined, Guaranty Corporation lacked the legal ability to contract with Mr. Tague to settle his workers' compensation claim outside the workers' compensation statutory scheme; any such agreement between Mr. Tague and Guaranty Corporation is, therefore, void; and the trial court's judgment granting the motion to dismiss is affirmed.

## Facts

Wire Rope Corporation of America, Inc. (Wire Rope) filed its petition for relief under Chapter 11 of the Bankruptcy Code on May 15, 2002.[2] Before filing for bank-

---

1. The Defendant/Respondent has been referred to as both "Missouri Private Sector Self–Insurer Guaranty Fund" and "Missouri Private Sector Self–Insurers Guaranty Corporation" in numerous filings throughout the pendency of this case. Defendant/Respondent's correct name is "Missouri Private Sector Individual Self–Insurers Guaranty Corporation." § 287.860.1.

2. Neither the record nor the parties' briefs fully set forth the background facts of this case. Supplemental facts were obtained from two published bankruptcy opinions involving Wire Rope and Guaranty Corporation. *In re Wire Rope Corporation of America, Incorporated,* 300 B.R. 1 (Bankr.W.D.Mo.2003) and *In re Wire Rope Corporation of America, Incorporated,* 302 B.R. 646 (Bankr.W.D.Mo.2003) involve whether Guaranty Corporation was required to pay workers' compensation claims that arose before Wire Rope's Chapter 11 petition was filed if the employees did not properly and timely file a proof of claim in Wire Rope's bankruptcy or otherwise preserve their rights as pre-petition claimants. The court held that Guaranty Corporation was required to pay pre-petition claims, that Wire Rope must amend its Schedule F to include all pre-petition injured workers as unsecured creditors, and that Guaranty Corporation must file a proof of claim on behalf of all of Wire Rope's pre-petition workers' compensation claimants. These are the only two published cases, state or federal, that appear to have involved the Guaranty Corporation or addressed in any way the statutory scheme by which the Guaranty Corporation was created and under which it operates.

ruptcy, Wire Rope was self-insured for its workers' compensation obligations. It had deposited $810,000.00 of collateral proceeds with Guaranty Corporation pursuant to Missouri Law. § 287.860 *et seq.* Effective May 12, 2003, Wire Rope obtained private insurance to cover its workers' compensations obligations and thereby ceased its existence as a self-insured entity. On June 24, 2003, the bankruptcy court confirmed Wire Rope's plan of liquidation and approved the sale of substantially all of Wire Rope's assets to KPS Special Solutions Funds II, L.P. and its nominee Blue Wire Acquisition Corp. (collectively Blue Wire). Blue Wire agreed to pay $605,000.00 to Guaranty Corporation to administer post-petition workers' compensation claims arising in Wire Rope's self-insured period (the period between May 15, 2002, the date Wire Rope filed bankruptcy, and May 12, 2003, the date Wire Rope obtained private insurance) in compliance with the bankruptcy court's June 23, 2004, order. In return, Guaranty Corporation agreed not to hold Blue Wire responsible for any of Wire Rope's pre-petition, self-insured workers' compensation obligations.

Under Missouri's statutory scheme [3] creating and governing the activities of Guaranty Corporation, the Guaranty Corporation is a not-for-profit corporation,[4] and its purpose is "to compensate workers entitled to receive workers' compensation benefits from a Missouri self-insurer that is unable to meet its workers' compensation benefit obligations." §§ 287.860.1, 287.865.2. The members of Guaranty Corporation are employers that are self-insured for purposes of workers' compensation. § 287.860.1. The general purpose of Guaranty Corporation is to "take the necessary actions to protect against the insolvency of a member of the corporation." § 287.870.2. As part of its operation, Guaranty Corporation manages an "Insolvency Fund." § 287.867. The purpose of Guaranty Corporation's insolvency fund is to meet "the obligations of insolvent members incurred while members of the Guaranty Corporation and after the exhaustion of all assets." [5] § 287.867. Pursuant to the liqui-

3. The statutory scheme creating and governing Guaranty Corporation is found at section 287.860 *et seq.* The only other statutory reference to Guaranty Corporation is found at section 375.772.2(16), which states that, as used in sections 375.771 through 375.779, the term "self-insurer" does not include Guaranty Corporation. All citations to sections 287.860 *et seq.* are to RSMo 2000 with the exception of citations to section 287.865, which are to RSMo Cum.Supp.2005.

4. Mr. Tague repeatedly refers to Guaranty Corporation as an insurance company licensed to do business in the State of Missouri. This is not accurate, as Guaranty Company is a statutorily created not-for-profit corporation.

5. *In re Wire Rope Corp. of America, Inc.,* 300 B.R. 1, 10 (Bankr.W.D.Mo.2003):
Nevertheless, Mo.Rev.Stat. § 287.865.5 requires that the injured worker file a timely claim for payment in the bankruptcy estate, which amount is offset by the Guaranty Corporation. Because the Guaranty Corporation's liability is coextensive with that of the Debtor, the Guaranty Corporation is like an excess insurer who is only liable to the extent the Debtor cannot pay. Logically, to help defray the burden assumed by the Guaranty Corporation, an injured worker is required to "make a timely claim for payment"—i.e., become an unsecured creditor of the estate in the hopes of receiving a distribution from the sale of assets, which amount is subtracted from the Guaranty Corporation's future compensation obligation. Although the pre-petition workers in this case had their claims allowed by the Debtor and its third-party administrator, those claims were not included in the list of unsecured creditors of the Debtor's estate and are not entitled to a distribution resulting from the sale of the Debtor's assets. Thus, under the plain language of the Missouri statute, when an injured worker fails to make a timely claim for payment, there is no "incident giving rise to claims for

dation plan, approved by the bankruptcy court on June 24, 2003, all of Wire Rope's assets have been exhausted. Guaranty Corporation has the statutorily granted authority to "[n]egotiate and become a party to such contracts and perform such other acts as are necessary or proper to effectuate the purpose of sections 287.860 to 287.885." § 287.865.6(5).

On September 22, 2002, Gary Tague filed a Claim for Compensation with the Division of Workers Compensation (Division) alleging that "during the months of August or September 2001" he injured his back while employed by Wire Rope. On November 4, 2002, Wire Rope filed an answer to Mr. Tague's claim for compensation with the Division. On August 18, 2003, Guaranty Corporation filed an amended answer with the Division on behalf of Wire Rope, which claims it was then administering. The amended answer disputed that Mr. Tague's injury was work related and asserted that Mr. Tague failed to give proper and timely notice of his claim.[6]

On January 13, 2005, Mr. Tague filed his Petition to Enforce Settlement in Buchanan County Circuit Court. The petition alleged the following. On February 13, 2003, Mr. Tague's attorneys faxed a settlement demand to Kip Kubin, the attorney for the insurer, Helmsman Management Services, Inc., making a demand for settlement of the workers' compensation claim in the amount of $91,265.10. On August 18, 2003, Jeffrey Deane, with the law offices of Foland, Wickens, Eisfelder, Roper & Hofer, P.C., entered his appearance on behalf of Wire Rope, Guaranty Corporation, and Corporate Claims Management

Services. The February 13, 2003, settlement demand was faxed by Mr. Tague's attorney to Mr. Deane on October 21, 2003. On June 14, 2004, a settlement of Mr. Tague's workers' compensation claim was reached in the amount of $13,175.00. Shortly thereafter, the attorney for insured, Sean Dumm, requested claimant to settle this "outside workers' compensation" for the same amount. He forwarded an Agreement and Release to Mr. Tague's attorney.[7] In consideration of settling the claim outside the workers' compensation system, Mr. Tague agreed to stipulate to a dismissal of his workers' compensation claim with prejudice and to cancel the final workers' compensation hearing scheduled for June 15, 2004. On August 16, 2004, Mr. Tague received a letter from Sean Dumm representing that the settlement amount had been set aside for the purpose of settling Mr. Tague's claim. On August 23, 2004, Mr. Tague filed the dismissal of his workers' compensation claim agreed upon by all parties. After repeated requests by Mr. Tague for payment of the settlement, J. Sean Dumm, attorney for insurer, contacted Mr. Tague's attorney and "withdrew" the negotiated settlement offer. Mr. Tague's petition to enforce the settlement prayed for enforcement of the $13,175.00 settlement agreement, costs, attorney fees, and interest.

Mr. Tague filed a Motion for Order of Default on March 21, 2005, and alleged that a default had occurred because Guaranty Corporation failed to respond to the petition. On March 31, 2005, Guaranty Corporation filed Suggestions in Opposition to Motion for Order of Default and

compensation" for which the Guaranty Corporation is obligated to pay.

**6.** The dispute concerning whether Mr. Tague gave proper and timely notice was resolved by the two bankruptcy cases discussed, *supra*.

**7.** Mr. Tague asserts in his brief that this "document is never necessary to settle a workers' compensation case; a form stipulation for compromise settlement is used."

alleged that Guaranty Corporation had appeared through counsel at the February 16, 2005, docket call and that, pursuant to section 517.031.2, a responsive pleading need not be filed in a Chapter 517 case.

Guaranty Corporation filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction on April 8, 2005. It alleged that Mr. Tague's workers' compensation claim had not been dismissed, as the Administrative Law Judge (ALJ) presiding over the claim did not sign the Order to Dismiss with Prejudice. In support of the allegation that the workers' compensation claim was still pending, Guaranty Corporation cited the following: on October 12, 2004, Mr. Tague's counsel sent a letter to the ALJ stating he was through with discovery and asking the ALJ to docket the case for a trial setting; on December 2, 2004, the Division sent a Notice of Pre–Hearing to the parties informing them that a pre-hearing conference would be held on January 5, 2005; and on February 16, 2005, Mr. Tague requested mileage reimbursement in connection with his vocational evaluation in the workers' compensation cases. Guaranty Corporation denied that it ever agreed to settle the claim and argued that the Buchanan County Circuit Court did not have subject matter jurisdiction to enforce the claimed settlement agreement because Mr. Tague's exclusive remedy was in the workers' compensation system. It further alleged that the parties could not confer subject matter jurisdiction upon the circuit court by agreeing to settle the claim "outside workers' compensation."

Mr. Tague filed Plaintiff's Response to Defendant's Motion to Dismiss on April 29, 2005. Mr. Tague alleged that he "complied with his end of the bargain," the settlement agreement, by filing the motion to dismiss the workers' compensation claim with prejudice and that the ALJ did not sign the dismissal at Guaranty Corporation's request. He further alleged that the settlement agreement met all the essential elements for a contract and that a motion to enforce a contract is a separate action over which the circuit court has jurisdiction.

On May 17, 2005, Guaranty Corporation filed Defendant's Reply to Plaintiff's response to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction. Guaranty Corporation alleged that it was not an insurance company, its insolvency funds can be used solely to compensate persons entitled to receive workers' compensation benefits from a Missouri self-insurer that is unable to meet its workers' compensation benefits, Mr. Tague does not allege that the settlement was approved by the ALJ, and the workers' compensation case is still pending. It further alleged that Mr. Tague's exclusive remedy was in the workers' compensation system.

A hearing was held on the motion to dismiss on May 24, 2005 and the court granted the motion and dismissed the matter with prejudice. On July 21, 2005, judgment was entered and Mr. Tague filed a timely notice of appeal.

## Standard of Review

A motion to dismiss for lack of subject-matter jurisdiction should be granted whenever it appears, by a preponderance of the evidence that the trial court is without jurisdiction. *Dorris v. Missouri Substance Abuse Counselors' Certification Bd., Inc.,* 10 S.W.3d 557, 559 (Mo.App. W.D.1999). "The decision to dismiss for lack of subject matter jurisdiction is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion." *Id.*

## Analysis

Mr. Tague argues that the trial court has subject matter jurisdiction over

his petition to enforce the settlement agreement. He asserts that all of the essential elements for a contract were alleged and that the settlement contract suspends the original claim, which was settled. Mr. Tague argues he was in essence requesting a declaratory judgment from the court regarding the settlement agreement. He relies upon *Vulgamott v. Perry*, 154 S.W.3d 382 (Mo.App. W.D.2004), for his contention that the workers' compensation system does not have exclusive jurisdiction over this matter. In *Vulgamott*, employee was injured in accident involving motor vehicle driven by a co-employee, and he brought an action against the co-employee and co-employee's liability insurer to enforce a settlement agreement. The circuit granted defendants' motions to dismiss, and employee appealed. This court determined that the trial court had jurisdiction to enforce the settlement agreement even if exclusivity provisions of the Workers' Compensation Act barred suit for the underlying negligence action in circuit court.

Guaranty Corporation's response is multi-fold. First, it argues that any settlement of workers' compensation claims must be approved by an ALJ, and this alleged settlement was not approved by an ALJ. Second, it argues that parties may not avoid the exclusivity of the workers' compensation system over workers' compensation claims and confer subject matter jurisdiction upon a circuit court by agreeing to settle "outside workers' compensation." Third, it argues that the agreement Mr. Tague asserts was reached, by its terms, settles the claim within the workers' compensation system. Fourth, it argues that it is without the statutory authority to enter into a settlement of the type Mr. Tague alleges was reached. Fifth, it argues that *Vulgamott* is distinguishable and inapplicable to this matter. Finally, it argues that the workers' compensation claim is still pending and has not been dismissed.

Guaranty Corporation's assertion that it is without the statutory authority to enter into a settlement of the type Mr. Tague alleges is dispositive. Wire Rope, as a self-insurer for purposes of workers' compensation, was a member of Guaranty Corporation. Guaranty Corporation's purpose is "to compensate workers entitled to receive workers' compensation benefits from a Missouri self-insurer which is unable to meet its workers' compensation benefit obligations." § 287.865.2. When Wire Rope filed bankruptcy, Guaranty Corporation became obligated to fulfill Wire Rope's workers' compensation obligations. This includes any obligation that may be owing to Mr. Tague for his workers' compensation claim. To carry out its statutory goal, Guaranty Corporation maintains an insolvency fund. The purpose of Guaranty Corporation's insolvency fund is to meet "the obligations of insolvent members incurred while members of the Guaranty Corporation and after the exhaustion of all assets." § 287.867. As set forth in the statute: "All moneys in the insolvency fund … shall be used *solely* to compensate persons entitled to receive workers' compensation benefits from a Missouri self-insurer which is unable to meet its workers' compensation benefit obligations and to defray the expenses of the fund." § 287.865.2 (emphasis added). The statutory scheme further provides: "All moneys, property and other assets received, owned or otherwise held by the corporation shall be held in such a way as to safeguard the corporation's ability to assure that the purpose and objectives of the corporation shall be advanced and that moneys needed to pay claims to employees of an individual insolvent self-insurer in the private sector shall be preserved." § 287.865.11.

Assuming, without deciding, that every fact Mr. Tague asserts is true and Guaranty Corporation entered into a contract with Mr. Tague to settle his claim "outside workers' compensation," Guaranty Corporation lacked the legal capacity to enter into such agreement, and the agreement is void. Guaranty Corporation is a creature of the legislature and has only the authority granted by statute. *Riverside–Quindaro Bend Levee Dist., Platte County, Missouri v. Missouri American Water Co.,* 117 S.W.3d 140, 151 (Mo.App. W.D.2003). Guaranty Corporation was created to function within the workers' compensation system. It has the statutorily granted authority to "[n]egotiate and become a party to such contracts and perform such other acts as are necessary or proper to effectuate the purpose of sections 287.860 to 287.885." § 287.865.6(5). Thus, it has the authority to enter into contracts to settle claims within the workers' compensation system.

When interpreting statutes, appellate courts "are to ascertain the intent of the legislature by giving the language used its plain and ordinary meaning." *Care and Treatment of Morgan v. State,* 176 S.W.3d 200, 206 (Mo.App. W.D.2005). Where, as here, the legislative intent is clear from the language employed in the statute, an appellate court is without authority to read into the statute a contrary intent. *Id.* The sections set forth, *supra,* clearly delineate that, although Guaranty Corporation has authority to settle claims within the workers' compensation system, the General Assembly did not grant it authority to enter into contracts to settle workers compensation claims "outside workers' compensation."

An employer may resolve workers' compensation obligations in a couple of ways. The first way is by a hearing and an award issued by the ALJ. §§ 287.450, 287.460. The second way is that the claim is settled. § 287.390. If the claim is settled, it must be approved by the ALJ. § 287.390.1. If a self-insured employer files bankruptcy, Guaranty Corporation assumes the employer's worker compensation obligations and ensures that the injured employee receives the workers' compensation benefits to which he or she is entitled.

The essential elements of a contract are: (1) competency of the parties to contract; (2) proper subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Arndt v. Beardsley,* 102 S.W.3d 572, 575 (Mo.App. S.D.2003). Thus, to form a contract, a party to the proposed agreement must have the legal capacity to contract. Where no legal capacity to enter into a contract exists, no legally binding agreement can result. A valid contract cannot result unless both contracting parties are juristic entities at the time of its purported consummation. *Rhodes Engineering Co., Inc. v. Public Water Supply Dist. No. 1 of Holt County,* 128 S.W.3d 550, 561 (Mo. App. W.D.2004). Guaranty Corporation lacks legal authority to settle workers compensation claims outside the workers compensation statutory scheme because the legislature did not grant it authority to settle such claims outside the scheme. Thus, even if Guaranty Corporation agreed to settle Mr. Tague's workers compensation claim outside the workers compensation system, the agreement is void and of no legal effect. Therefore, Mr. Tague's reliance on *Vulgamott* is misplaced because, unlike the private parties in that case who had the legal capacity to contract with each other to settle a workers' compensation issue outside the workers compensation statutory scheme, Guaranty Corporation lacks such authority.

## Conclusion

■ Guaranty Corporation lacked the legal capacity to enter into a contract that purports to settle Mr. Tague's workers' compensation claim outside the workers' compensation statutory scheme, and if Guaranty Corporation entered into such a contract with Mr. Tague, it is void and not legally binding. The trial court lacks authority to enforce a void contract. Thus, the trial court correctly dismissed Mr. Tague's petition. The judgment is affirmed.

All concur.