**SMART CEMETERY, Plaintiff–Appellant,**

v.

**BELL HOLDINGS, L.L.C., and Stanley E. Bell, Registered Agent, and Stanley E. Bell, Individually, Defendants–Respondents.**

No. 26927.

Missouri Court of Appeals, Southern District, Division One.

March 6, 2006.

---

Paul F. Sherman, of Mann, Walter, Bishop & Herman, P.C., Springfield, MO, for Appellant.

S. Jacob Sappington, Blackwell Sanders Peper Martin, L.L.P, Springfield, MO, for Respondents.

ALMON H. MAUS, Senior Judge.

By its petition in this action, the plaintiff, Smart Cemetery, sought to quiet title and recover damages against defendants Stanley Bell and Bell Holdings, L.L.C., his development company. No one has raised an issue as to the capacity of Smart Cemetery to sue. *See* Rule 55.13.

The basic issue in this case is whether or not an agreement to settle a dispute which is the subject of a pending action may be enforced by a motion in that action. In this case, the trial court sustained the defendants' motion to enforce a settlement agreement and dismissed the action. Smart Cemetery appeals that judgment. The underlying dispute concerns a tract of land on the south side of Smart Cemetery.

Smart Cemetery is a long-established country cemetery in the southeast corner of the Northeast Quarter (NE—¼) of the Southwest Quarter (SW—¼) of Section Twenty–Four (24), Township Twenty–Seven (27), Range Twenty–Four (24) in Christian County, Missouri. It is on the east side of Smart Road, a north-south road. It is approximately 395 feet north and south and 350 feet east and west. During the time relevant to this case, it has been enclosed by a chain link fence. A tract of 132 feet north and south and 208 feet east and west, south of the cemetery, had been used for cemetery purposes which included access to the cemetery from Smart road, parking, maintaining a pile of dirt for cemetery use, and a small storage building.

Defendant Stanley Bell is a real estate developer. Defendant Bell Holdings, L.L.C., is his development company. In February 2003, Bell purchased land described as "The East Half (E 1/2) of the Southwest Quarter (SW 1/4) of Section Twenty Four (24), Township Twenty–Seven (27), Range Twenty–Four (24), containing Eighty (80) acres, more or less, except four acres off the North Forty Acres deeded as a cemetery situate in Christian County, Missouri." Bell then platted this land as Cranbrook subdivision. The plat was presented to the Zoning Commission of Christian County. A public hearing was held at which one or more of the trustees of Smart Cemetery appeared and claimed it encroached upon property the cemetery owned. Nevertheless, the plat was approved by the Zoning Commission.

The plat provided a right of way of 50 feet for a public road which extended through the subdivision and entered Smart Road south of Smart Cemetery. There were to be ditches 2–1/2 feet in width on either side of the road. The construction of the road and ditches would occupy virtually all of the land south of the cemetery that had been used for access to the cemetery, parking and the storage building.

While there is no bilateral testimony to establish the same, Bell apparently had an understanding with the cemetery board concerning the implementation of the subdivision. Without objection or contradiction, Bell testified that he dealt with all of the cemetery board of trustees. He dealt with Robert Gunnett (alleged in the petition to be president of the Cemetery), Christine Crow (who signed the agreement), and another individual. Bell stated that he donated to Smart Cemetery 30 feet of land to the south of the cemetery, subject to the platted road, and 30 feet of land to the east of the cemetery, so that they could use that area as a parking lot and an entrance area. He sold other land on the

north side of the cemetery to Smart Cemetery at slightly less than his cost. This area was to provide room for additional graves. He thought he had resolved their concern about the development of the subdivision.

Smart Cemetery filed its original petition in this action on March 3, 2004. Bell had heard of that filing, but had not been served when his crew entered the disputed area, graded the same and destroyed the storage building and started to construct the new road. He was then served with the summons and petition in this action. He stopped the work upon service. He filed a motion to dismiss the action.

Daniel Garbee was a road foreman for the Billings Special Road District. His duties required him to work on the Cranbrook subdivision. He was called by workers on the project to see if there was something he could do so that construction of the new road could continue. He drafted an agreement to resolve the controversy. He saw Bell sign it. He gave it to one of the members of Smart Cemetery's Board of Trustees to be signed by the Board. The following is a copy of that agreement.

Reference to—Dispute between Smart cemetery & Cranbrook Subdivision.

Party # 1 being Smart cemetery members

Party # 2 being Cranbrook subdivision developer Prepared by, Danny Garbee, B.S.R.D. foreman, a non partial party working in conjunction with Christain [sic] county commission to present both sides with a clearer view of how subdivision will affect both parties.

Party # 1 has agreed to accept the land that that [sic] party # 2 deeded to them,

Party # 1 agreed to drop restraining order, and any other means that will halt or prevent construction project from continuing with county approved project,

Party # 2 agreed to leave deeded propertys [sic] as shown on latest plat. This party also agreed to work with B.S.R.D. on providing adequate entrances to the cemetery from new road. This party also agreed to replace dirt for maintaining grounds which was removed during road construction.

I Danny Garbee after meeting with both parties feel this is a fair and reasonable solution to correct dispute [sic] between parties.

It is dated March 29, 2004. It is signed by three persons designated "Cemetery members" and signed by defendant Bell. Garbie was not a lawyer. Neither party consulted with their attorney before signing the agreement. This agreement was admitted into evidence, without objection, as "Exhibit A."

On April 27, 2004, the defendants filed a motion to enforce that agreement and to dismiss the action with prejudice. Smart Cemetery did not file a response to this motion. However, a search in the Recorder's office had disclosed a warranty deed dated December 6, 1906, which conveyed to Smart Cemetery three-fourths of one acre, an oblong square in the northwest quarter of the southeast quarter of the southwest quarter, section 24, Township 27, range 24. This is substantially the disputed tract.

On July 4, 2004, Smart Cemetery filed its first amended petition which is the same as the original petition except it claimed the disputed area by acquired title instead of its original claim of ownership by adverse possession. A hearing on the motion to enforce the settlement agreement was held on November 1, 2004.

On December 2, 2004, the trial court made findings of facts substantially similar

to the facts stated above. The trial court entered judgment sustaining the defendants' motion to enforce the settlement agreement, and it dismissed Smart Cemetery's claims against the defendants, with prejudice. Smart Cemetery's motion under Rule 74.06 seeking relief from that judgment was overruled. Smart Cemetery appeals from that judgment.

■ On appellate review of the judgment, this court accepts the findings of the trial court if supported by the evidence. The judgment is to be affirmed unless no substantial evidence supports it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Brizendine v. Conrad,* 71 S.W.3d 587, 590 (Mo.banc 2002). This court is obligated to review only those points relied upon by the Appellant as stated in its brief. *Greene County Concerned Citizens v. Bd. of Zoning Adjustment of Greene County,* 873 S.W.2d 246, 255 (Mo.App. S.D.1994); *In re Care and Treatment of Burgess,* 72 S.W.3d 180, 184 (Mo.App. S.D.2002).

■ Having stated the scope of review, at the outset, it is appropriate to observe that it is established that an agreement to settle a lawsuit may be enforced by a motion in that lawsuit. *Vulgamott v. Perry,* 154 S.W.3d 382, 387 (Mo. App. W.D.2004). "Although there is no rule defining the process for enforcing an agreement settling a pending case, one court-approved procedural device is a motion to enforce settlement." *McKean v. St. Louis County,* 964 S.W.2d 470, 471 (Mo.App. E.D.1998).

Rule 84.04(d)(1)(B) mandates that a "Point Relied On" in an appellate brief shall "state concisely the legal reasons for the appellant's claim of reversible error." Smart Cemetery's first point is stated in a rambling, disjointed manner. It could be found to violate that Rule and to present nothing for appellate review. However, to clarify the interests of the parties, this court will interpret the same as presenting the basic complaint that the trial court erred in enforcing Exhibit A (the settlement agreement) because it is not authorized by Smart Cemetery in the manner required by § 432.010, RSMo 2000[1] (the Statute of Frauds) and it found Smart Cemetery bound by "an indefinite, unrecordable, unnotarized document wholly without authorized signature by Plaintiff Cemetery itself or by written proof of the authority of another to sign on plaintiff cemetery's behalf as required by the Statute of Frauds."

Initially, it is noted that Smart Cemetery failed to raise the statute of frauds as a defense in its pleadings or at the hearing on the defendants' motion to enforce the settlement agreement. Its claim that the agreement violates the Statute of Frauds has been waived. *Norden v. Friedman,* 756 S.W.2d 158, 162 (Mo.banc 1988) (stating that statute of frauds defense is waived when not raised in the pleadings or at trial); Rule 55.08. Point I may be denied on this basis.

■ Even if this court assumes that Smart Cemetery did not waive the statute of frauds defense, it should first be observed that a written instrument need not be notarized and recordable to satisfy the Statute of Frauds. Nothing in the statutes, nor in any cases, requires an opposite conclusion. The remaining assertion is that Exhibit A does not satisfy the Statute of Frauds because it is "wholly without authorized signature by Plaintiff Cemetery itself or by written proof of the authority of another to sign on behalf of Plaintiff." This point calls into question the nature of the entity "Smart Cemetery." The origi-

---

**1.** All references to statutes herein are to RSMo 2000, unless otherwise noted.

nal petition alleges it "is an unincorporated organization having a 'Board of Trustees' of which Robert Gunnett is the President." The amended petition alleges it "is a cemetery association commenced on or before 1887, having a 'Board of Trustees.'" This amendment apparently recognizes § 214.390, which in part provides that "Cemeteries existing at the time of the adoption of sections 247.270 to 314.410 shall hereafter be operated subject to the provisions of sections 214.270 to 214.410." These sections were enacted in 1961. Apparently, Smart Cemetery elected to operate as an endowed association through trustees. § 214.280.

■ The record reflects that Smart Cemetery has three trustees on its board. Bell dealt with all three of these trustees. The record also shows that the trustees were presented with Exhibit A, and that they approved it. All three trustees signed Exhibit A. Those signatures certainly satisfy the statute of frauds. Point I is therefore denied.[2]

■ Point II claims that there is no consideration to support the agreement expressed in Exhibit A. An extended discussion is not necessary. Suffice it to say, that the document expresses a compromise of claims to the land south of the cemetery. "[T]he rule is that the compromise of a doubtful claim is good consideration for a contract." *Hauk v. First Nat'l Bank of St. Charles*, 680 S.W.2d 771, 775 (Mo.App. E.D.1984).

■ Smart Cemetery's third and final point is that the trial court erred in enforcing Exhibit A because the record establishes the parties labored under a mutual mistake of material fact at the time of signing the agreement. It contends that the area south of the cemetery had been deeded to Bell, when after the execution of that agreement it was discovered that it had been deeded to Smart Cemetery.

■ For a mutual mistake to avoid a contract, it must be a mistake of a material fact. *Byrd v. Liesman*, 825 S.W.2d 38, 40 (Mo.App. S.D.1992). The mistake Smart Cemetery asserts is the parties' lack of knowledge that the area south of the cemetery had in fact been deeded to the cemetery. This mistake is not material. Both parties were aware that Smart Cemetery claimed to own the same, whether by adverse possession, as first claimed, or by deed, is immaterial. Point III is denied.

The judgment is affirmed.

RAHMEYER, P.J., and PARRISH, J., concur.

---

**2.** Although not addressed by either party, if the dispute between Smart Cemetery and the defendants is one of a boundary dispute, the Statute of Frauds is inapplicable. If a dispute regarding ownership of land involves a boundary dispute, the statute of frauds does not apply to bar enforcement of an agreement to settle the dispute. *Meyer v. Lipe*, 14 S.W.3d 117, 119 (Mo.App. E.D.2000). However, this court does not resolve Point I on the basis of there being a boundary dispute.