Stephanie **WHITEHILL,** as Personal Representative of the Estate of Daran Whitehill, et al., **Respondent,**

v.

Charles **WHITEHILL,** et al., **Appellant.**

No. 27611.

Missouri Court of Appeals, Southern District, Division Two.

March 28, 2007.

Abe R. Paul, Pineville, for appellant.

Andrew Wood, Sims, Johnson, Wood & Farber, Neosho, Charles Buchanan, Buchanan & Williams, Joplin, for respondent.

ROBERT S. BARNEY, Judge.

This litigation involves claims for the rights to certain annuity payments following the death of the annuitant, Daran Whitehill ("Daran").[1] Appellant Charles Whitehill ("Charles"), Daran's brother, appeals the trial court's grant of summary judgment in favor of Respondent Stephanie Whitehill ("Stephanie"), in her capacity as personal representative of Daran's estate, following the trial court's determination that Daran's estate was entitled to the annuity payments at issue.[2] Appellant now raises three points of trial court error, discussed below. We affirm.

The record reveals that on March 9, 2000, Daran's arm was severed by an industrial machine in a work-related accident. Daran and Stephanie made claims for personal injuries and loss of consortium against Continental Products Corporation ("the machine manufacturer"). On

---

1. For ease of analysis, we have chosen to refer to the parties by their first names. In so doing, we mean no disrespect.

2. Although estranged from each other, Stephanie and Daran were married at the time of his death.

April 22, 2003, while the personal injury lawsuit was pending, Daran filed a petition to dissolve his marriage with Stephanie. The parties never dissolved their marriage.

Shortly thereafter, the personal injury lawsuit was settled. The "Settlement Agreement and Complete General Release" ("the Agreement") dated June 4, 2003, was signed by Daran and Stephanie as "Plaintiffs." [3] Other pertinent parties included the machine manufacturer and the insurance company for the machine manufacturer ("the Insurers"). The Agreement made provisions for the disbursement of settlement funds and provided for the creation of an annuity. Paragraph 2.0 of the Agreement relating to "Payments" set out:

> In consideration of the release and discharge set forth above, [the Insurers] ... agree to pay to the individuals named below ('Payees') the following sums in the manner described below.
>
> 2.1 Payments due at the time of settlement are as follows
>
> $1,150,000.00 payable to Daran and Stephanie ... and their attorney ...
>
> 2.2 Periodic Payments made according to the schedule as follows ...
>
> $3,773.86 monthly for life, guaranteed for 240 payments, beginning on July 01, 2003, with the final guaranteed payment on June 01, 2023.

Paragraph 4.0 of the Agreement provided the provision relating to the designation of a beneficiary:

> Any payments to be made after the death of any Payee pursuant to the terms of this Settlement Agreement shall be made to such person or entity as shall be designated in writing by *Plaintiffs* to the Insurers ... If no person or entity is so designated by *Plaintiffs*, or if the person designated is not living at the time of the Payee's death, such payments shall be made to the estate of the Payee. No such designation, or any revocation thereof, shall be effective unless it is in writing and delivered to the Insurers.... The designation must be in form acceptable to the Insurers ... before such payments are made.

(Italics added.)

The record also reveals that a certain "Annuitant's Information Questionnaire" ("the Questionnaire") had been sent to Daran *prior* to the signing of the June 4, 2003, Agreement. Daran executed the Questionnaire on May 19, 2003, and designated Charles as his "Primary Beneficiary" and his other brother, Randy Whitehill ("Randy"), as his "Contingent Beneficiary." [4] The Questionnaire was signed only by Daran. It was not until after his death that Stephanie found out that Daran had executed the Questionnaire naming his brothers as primary and contingent beneficiaries in the event of his death.

Daran was killed in an automobile accident on January 13, 2004. As previously set out, he and Stephanie were still married at that time. Stephanie was appointed as the personal representative of Daran's estate at which time she discovered the beneficiary designation Daran had made on the Questionnaire. As a result, she filed this underlying action against Charles and others to determine the rights of the parties under the Agreement. [5]

---

**3.** The introductory paragraph of the Agreement defined "Plaintiffs" as Daran Whitehill *and* Stephanie Jo Whitehill.

**4.** Randy is not a party to this appeal.

**5.** Stephanie's third amended petition was in six counts. In Count I, she sought declaratory relief, asking the trial court to declare the rights of the parties with regard to the annuity. Save for Count I, she ultimately dismissed

On December 13, 2005, Stephanie filed her Motion for Summary Judgment in which she alleged the Agreement of June 4, 2003, provided that annuity payments would be made to beneficiaries named in writing to the Insurers or if no designation was made, "to the estate of the Payee." She argued there was no factual dispute that she and Daran did not designate a beneficiary per the terms of the Agreement. She also maintained the beneficiary designation made by Daran on the Questionnaire was ineffective to vary the terms of the Agreement. Accordingly, she asserted the periodic payments from the annuity should be made "to the estate of the Payee."

In his response to Stephanie's motion for summary judgment, Charles contended then, as he does now in this appeal, that "due to the terms of [a separate] settlement reached by the parties" on May 14, 2003, *prior* to the June 4, 2003, Agreement, "Stephanie ... had no interest in the annuity for Daran ... and it was within Daran['s] sole discretion as to whom to designate as beneficiary under terms of the annuity contract." [6]

On March 7, 2006, the trial court granted Stephanie's motion for summary judgment. The trial court found "the evidence is undisputed that [Stephanie and Daran] did not make any written designation of beneficiaries and that under the terms of the ... Agreement ... the annuity payment[s] ... shall be paid to the Estate of Daran...." This appeal by Charles followed.

Pursuant to Rule 74.04, to be entitled to summary judgment, the movant must show that: (1) there is no genuine dispute as to the material facts on which the movant is relying for summary judgment; and (2) based on those undisputed facts, the movant is entitled to judgment as a matter of law.[7] A genuine issue exists, as to one of the material facts underlying the moving party's right to summary judgment, where the record contains competent evidence that demonstrates two plausible, but contradictory, accounts of the essential facts. *See ITT Comm'l Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 382 (Mo. banc 1993). A genuine issue "implies that the issue, or dispute, must be a real and substantial one—one consisting not merely of conjecture, theory and possibilities." *Id.* at 378.

"When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered." *Id.* at 376. "We accord the non-movant the benefit of all reasonable inferences from the record." *Id.* Since "the criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially," our review is essentially *de novo. Id.*

■ In his first of three points on appeal Charles maintains the trial court erred in granting Stephanie's motion for

---

the remaining counts in her petition. The trial court determined the counterclaims of the defending parties to be moot based on its grant of summary judgment as to Count I of Stephanie's third amended petition. Only Charles appeals.

6. The purported May 14, 2003, agreement appears to be a verbal agreement. No written agreement is found in the record or was

presented to the trial court relating to any purported May 14, 2003, understanding between Stephanie and Daran. The terms of this purported verbal agreement come from the affidavit of attorney Karl Blanchard ("Mr. Blanchard"), who was Daran's divorce attorney.

7. All rule references are to Missouri Court Rules (2006).

summary judgment "and declaring that the beneficiary designations of [Charles and Randy] be set aside because [the Agreement] was ambiguous in that [the Agreement] did not require that both [Daran and Stephanie] agree on the beneficiary designations."

Charles asserts that while the Agreement defines "Plaintiffs" as being Stephanie *and* Daran the Agreement goes on to state that only Daran was entitled to "periodic payments." Charles maintains that to interpret the Agreement any other way "would lead to the absurd result that Daran ... would be required to garner the consent of [Stephanie], who ..." was seeking to become his ex-wife and "had no entitlement whatsoever to periodic payments under the [Agreement]." Accordingly, Charles essentially argues that in order to effectuate the true intention of the parties to the Agreement, the word "and" in the definition of "Plaintiffs," i.e., Daran Whitehill *and* Stephanie Jo Whitehill, should, in this instance, be construed to mean "or", i.e., Daran Whitehill *or* Stephanie Jo Whitehill. Charles maintains the trial court was incorrect in finding the Agreement required both "Plaintiffs" to designate a beneficiary in writing, because the term "Plaintiffs" is ambiguous; thus, the trial court should have turned to the Questionnaire and also permitted parol evidence to resolve this ambiguity.

Stephanie counters that the Agreement was not ambiguous and that parol evidence is therefore inadmissible to change the terms of the written Agreement. She argues parol evidence may not be used to create an ambiguity in an otherwise unambiguous document. She maintains that here, "giving the word 'and' its normal accepted meaning does not result in an 'absurd result' or 'defeat the purpose' ..." of the plain meaning of the Agreement.

Stephanie also relates that she and Daran "had three small children, ages 6, 9 and 10," and "[t]he ability to control the beneficiary designation was important ..." to her. Further, Stephanie states she "would not have agreed that the monthly payments would go to Daran's brother, leaving her and the three minor children without support." Accordingly, she argues, "the requirement that both [she and Daran] join in a beneficiary designation was reasonable and an important requirement...."

■ In our analysis we observe that the parol evidence rule is a rule of substantive law, and not merely a rule of evidence. *Sherman v. Deihl*, 193 S.W.3d 863, 866 (Mo.App.2006). " 'Parol evidence may not be used to vary or contradict terms of an unambiguous and complete written instrument absent fraud, common mistake, accident or erroneous omission.' " *Klinckman v. Pharris*, 969 S.W.2d 769, 772 (Mo.App.1998) (quoting *Craig v. Jo B. Gardner, Inc.*, 586 S.W.2d 316, 324 (Mo. banc 1979)). "It is well established in Missouri that the parol evidence rule bars the admission of extrinsic evidence unless a contract is ambiguous." *Silver Dollar City, Inc. v. Kitsmiller Const. Co., Inc.*, 931 S.W.2d 909, 914 (Mo.App.1996). " 'An ambiguity exists when there is more than one reasonable interpretation that can be gleaned from the contract language.' " *Id.* (quoting *Coughenour v. Bates,* 785 S.W.2d 291, 297 (Mo.App.1990)). " 'A contract is ambiguous only if its terms are susceptible of more than one meaning so that reasonable persons may fairly and honestly differ in their construction of the terms.' " *Garner v. Hubbs*, 17 S.W.3d 922, 927 (Mo.App. 2000) (quoting *Frager v. Frager,* 949 S.W.2d 173, 176 (Mo.App.1997)). A document is not ambiguous merely because the parties do not agree as to the meaning of its terms. *Lowery v. Air Support Int'l,*

*Inc.*, 982 S.W.2d 326, 329 (Mo.App.1998). "Extrinsic and parol evidence cannot be used to create an ambiguity." *Blackburn v. Habitat Dev. Co.*, 57 S.W.3d 378, 386 (Mo.App.2001). " 'A party cannot use parol evidence to show that an obligation is other than that expressed in the written instrument.' " *Klinckman*, 969 S.W.2d at 772 (quoting *Angoff v. Mersman*, 917 S.W.2d 207, 211 (Mo.App.1996)). " 'Absent ambiguity the intent of the maker of a legal instrument is to be ascertained from the four corners of the instrument without resort to extrinsic evidence.' " *Blackburn*, 57 S.W.3d at 386 (quoting *Commerce Trust Co. v. Duden*, 523 S.W.2d 97, 99 (Mo.App. 1975)). "Whether a contract is ambiguous is a question of law." *Silver Dollar City*, 931 S.W.2d at 914.

First, in order to agree with Charles's argument, this Court would have to determine the Agreement was ambiguous; however, it is clear to this Court that is not the case.

As previously related, the Agreement expressly identified "Plaintiffs" as being "Daran Whitehall and Stephanie Joe Whitehill." It also provided at Paragraph 4.0 that "[a]ny payments to be made after the death of any Payee ... shall be made to such person or entity as shall be designated in writing by Plaintiffs to the Insurers...." Furthermore, Paragraph 4.0 also states that "[i]f no person or entity is so designated by Plaintiffs ... such payments shall be made to the estate of the Payee." Additionally, Paragraph 13 of the Agreement specifically sets out that "[t]his Settlement Agreement contains the entire agreement between Plaintiffs, the [machine manufacturer], and the Insurers with regard to the matters set forth in it and shall be binding upon and inure to the benefit of the executors, administrators, personal representatives, heirs, successors and assigns of each."

■ The language in the Agreement is clear and unambiguous. The term "Plaintiffs" is defined within the four corners of the document as referring to Plaintiffs Stephanie *and* Daran. "When a contract uses plain and unequivocal language, it must be enforced as written." *Lake Cable, Inc. v. Trittler*, 914 S.W.2d 431, 436 (Mo.App. 1996). Given these circumstances, parol evidence may not be used to vary or contradict the terms of the Agreement. *See Klinckman*, 969 S.W.2d at 772. The trial court did not err in its determination that "the evidence is undisputed that [Stephanie and Daran] did not make any written designation of beneficiaries ... under the terms of the ... Agreement." Point One is denied.

■ Charles's second point relied on contends the trial court erred in granting Stephanie's motion for summary judgment as to Count I because she "failed to prove the absence of material issues of disputed fact on the elements of [Charles's] affirmative defenses of accord, satisfaction, and settlement ...," because there "is a genuine dispute as to whether [Daran and Stephanie] settled all issues and were paid respective settlement proceeds according to their agreement as between themselves."

The crux of Charles's second point relied on is that prior to signing the Agreement of June 4, 2003, Stephanie and Daran entered into a verbal agreement between themselves relating to the distribution of the monies from the forthcoming settlement and there remain disputed issues relating to their verbal agreement. In response to Stephanie's petition, Charles raised the affirmative defenses of accord and satisfaction, and maintained that per the verbal agreement between Stephanie and Daran, Stephanie had already received all of the money to which she was entitled.

Charles argues that on or about May 14, 2003, prior to the signing of the Agreement, Stephanie and Daran agreed to purchase an annuity and also agreed on a division of the money from the settlement. According to Charles, at that time Daran and Stephanie verbally agreed to split the settlement monies as follows: $160,000.00 to Stephanie; $45,000.00 to a trust fund for their children; $750,000.00 in an annuity payable to Daran; and $166,549.00 to Daran. While there is no written documentation relating to any agreement of this sort, Charles presented the affidavit of Mr. Blanchard, Daran's divorce attorney, which set out the purported terms of the verbal understanding among Daran and Stephanie. Charles also asserts that Mr. Blanchard could elaborate as to the terms of this verbal agreement.

■■■■ As in Point One above, the parol evidence rule bars consideration of this ostensible, negotiated verbal agreement between Stephanie and Daran in light of their having entered into a subsequent, written Agreement dated June 4, 2003, which detailed the terms of their settlement with the machine manufacturer, the Insurers and other parties. As previously set out, the Agreement provided for the distribution in detail of the proceeds from their personal injury lawsuit which they had both previously filed. Generally, "[p]rior and contemporaneous negotiations and oral understandings of the contracting parties are said to merge into their written instrument and, with certain exceptions, that instrument cannot be varied, and a new and different contract substituted therefore[e], by parol testimony." *Fisher v. Miceli*, 291 S.W.2d 845, 848 (Mo.1956). "The application of the rule discharges prior and contemporaneous oral agreements because those agreements are considered to be merged into the written document." *Jake C. Byers, Inc. v. J.B.C.*

*Investments*, 834 S.W.2d 806, 812 (Mo.App. 1992). Accordingly, " '[t]he writing itself becomes and is the single and final memorial of the understanding and intention of the parties.' " *Blackburn*, 57 S.W.3d at 387 (quoting *Commerce Trust Co. v. Watts*, 360 Mo. 971, 231 S.W.2d 817, 820 (1950)). We also note the parol evidence rule "is justified on the basis of two premises: (1) a written document is more reliable and accurate than fallible human memory, and (2) varying written terms by extrinsic oral evidence opens the door to perjury." *Poelker v. Jamison*, 4 S.W.3d 611, 613 (Mo.App.1999). " 'In the absence of fraud, accident, mistake, or duress, the parol evidence rule *prohibits evidence of prior or contemporaneous oral agreements* which vary or contradict the terms of an unambiguous, final and complete writing,' " *Blackburn*, 57 S.W.3d at 386 (quoting *Jake C. Byers, Inc.*, 834 S.W.2d at 811) (emphasis added), as in the Agreement executed June 4, 2003.

Here, Charles's entire argument is premised on the admissibility and validity of a verbal agreement made between Stephanie and Daran *prior to the signing* of the written Agreement which is at the center of this lawsuit. Given the factual circumstances of this case, any consideration of this supposed prior verbal agreement is barred by the parol evidence rule. *See Jake C. Byers, Inc.*, 834 S.W.2d at 812.

Stephanie has demonstrated the absence of disputed facts on this issue and the trial court was correct in granting her motion for summary judgment. *See ITT*, 854 S.W.2d at 376. Point Two is denied.

■■■■ In his third point of trial court error Charles asserts the trial court erred in sustaining Stephanie's motion for summary judgment because there were disputed issues of material fact remaining in the case. Specifically, he asserts Stephanie's claim "is barred by the doctrine of promis-

sory estoppel in that [Daran and Stephanie] agreed to divide the settlement proceeds in their dissolution case and [Daran] relied on [Stephanie's] acceptance and receipt of her share of the settlement as agreed and such was to his detriment."

While Charles asserts in his appellate brief that Stephanie's claims are barred by promissory estoppel, he did not assert promissory estoppel as an affirmative defense in his response to her third amended petition and in his response to her motion for summary judgment. Under Rule 55.08, estoppel is an affirmative defense. *See Hoag v. McBride & Son Inv. Co.*, 967 S.W.2d 157, 171 (Mo.App.1998). "Failure to plead an affirmative defense constitutes a waiver ... of the affirmative defense." *Century Fire Sprinklers, Inc. v. CNA/Transp. Ins. Co.*, 23 S.W.3d 874, 877 (Mo.App.2000). "An issue raised for the first time on appeal and not presented to or decided by the trial court is not preserved for appellate review." *Care and Treatment of Burgess v. State*, 72 S.W.3d 180, 184 (Mo.App.2002). Accordingly, by not pleading promissory estoppel as an affirmative defense, Charles has waived this issue in his appeal. Point Three is denied.

The judgment of the trial court is affirmed.

GARRISON and LYNCH, JJ., concur.