**MUILENBURG, INC., Plaintiff–Appellant,**

v.

**CHEROKEE ROSE DESIGN AND BUILD, L.L.C., Defendant–Respondent.**

No. 28505.

Missouri Court of Appeals, Southern District, Division II.

May 5, 2008.

Stuart H. King, Springfield, MO, for plaintiff-appellant.

Deborah K. Dodge, Steven J. Blair, Springfield, MO, for defendant-respondent.

Don E. Burrell, Judge.

### Facts

Muilenburg, Inc. ("Muilenburg") appeals from the trial court's granting of Cherokee Rose Design and Build, L.L.C.'s ("Cherokee Rose") motion to enforce a settlement agreement.

Cherokee Rose acted as a general contractor and developer of the Lantern Hill subdivision in Christian County, Missouri ("Lantern Hill"). Muilenburg is a utility contractor and was hired by Cherokee Rose to install certain underground utilities within the subdivision. After the work had been performed, Muilenburg filed a petition (based on theories of breach of contract, quantum meruit, and action on an account) alleging that Cherokee Rose had failed to properly compensate Muilenburg for the services provided. Cherokee Rose brought several counterclaims against Muilenburg. Those counterclaims alleged that the services had been performed in a negligent, unworkmanlike manner and that Muilenburg had misrepresented the amount of rock it had hauled away from the subdivision.

On August 25, 2006, after the parties had filed their respective claims against each other, Steven Blair ("Blair"), counsel for Cherokee Rose, sent a letter to Muilenburg's counsel proposing a settlement of all claims ("August 25 Letter"). In the August 25 Letter, Cherokee Rose proposed that:

a. [Cherokee Rose] will sell to [Muilenburg] Lots 7, 8, & 9 of Phase II of Lantern Hill, along with the adjoining five acres accessible through Lot 7 or 10th Ave., for the below market price of $75,000.00. These 5 acres have the potential, with minimal infrastructure cost, to be subdivided into several lots and developed at a substantial profit to [Muilenburg].

b. In consideration of the performance of subpart(a), [Muilenburg] will execute a Full and General Release in favor of [Cherokee Rose] and vice versa;

c. In further consideration of the performance of subpart(a), [Muilenburg] will execute a Voluntary Dismissal with Prejudice in Case No. CV102–1025CC pending in the Circuit Court of Christian County; and vice versa; and

d. All parties will bear their own costs.

Muilenburg's counsel responded on behalf of Muilenburg in a letter dated Octo-

ber 28, 2006 ("October 28 Letter"). The October 28 Letter stated:

My client has authorized me to convey its acceptance of the settlement offer outlined in your correspondence of August 26, 2006. Your client will need to convey marketable title by way of a warranty deed and my client would like [Cherokee Rose] to provide us with a current commitment for title insurance in order that we can review the current status of the title.

Unless I hear from you otherwise, I will assume that you are going to prepare the agreement and dismissal documents.

After receiving the October 28 Letter, Blair drafted a full and general release agreement to effectuate the settlement agreement proposed by the August 25 Letter. Blair then sent the settlement release documents to Muilenburg. David Randall Muilenburg ("Mr. Muilenburg") is the "owner" of Muilenburg. Mr. Muilenburg testified that when he received the settlement release documents he realized for the first time that Muilenburg would have to pay $75,000 to Cherokee Rose in order to receive the lots referenced in the August 25 Letter. Muilenburg then refused to execute the final settlement documents and Cherokee Rose brought its motion to enforce the settlement agreement.

After a hearing on the matter, the trial court sustained Cherokee Rose's motion to enforce the settlement agreement and ordered the parties to perform their respective duties under that agreement.

Muilenburg appeals raising three points: 1) that the August 25 Letter was ambiguous and, therefore, no meeting of the minds occurred between the parties; 2) that the August 25 Letter did not contain the essential terms of a settlement agreement; and 3) that the October 28 Letter did not constitute an unconditional acceptance of the offer made in the August 25 Letter. For ease of analysis, we address Muilenburg's points in reverse order.

### Standard of Review

The general rule is that in reviewing a court-tried case, we will affirm the judgment unless it is against the weight of the evidence, there is no substantial evidence to support it, or the trial court has erroneously applied or declared the law. *Eaton v. Mallinckrodt, Inc.*, 224 S.W.3d 596, 598 (Mo. banc 2007); *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). However, matters of contract interpretation—including whether or not a contract is ambiguous—are questions of law to be reviewed *de novo* on appeal. *Monsanto Co. v. Syngenta Seeds, Inc.*, 226 S.W.3d 227, 230 (Mo.App. E.D.2007).

### Analysis

No specific process exists in Missouri for enforcing a settlement agreement. *Eaton,* 224 S.W.3d 596, 599. One possible method of enforcement is to raise the issue in a motion to enforce the settlement agreement. Id. The party seeking to enforce the agreement must prove its existence by clear, convincing and satisfactory evidence. Id. Settlement agreements are governed by principles of contract law. *Neiswonger v. Margulis,* 203 S.W.3d 754, 760 (Mo.App. E.D.2006). So long as the essential terms are present in a contract and are sufficiently definite to enable a court to give them exact meaning, the contract will be found to be valid and enforceable even if some terms are missing or left to be agreed upon at a later time. *Vulgamott v. Perry,* 154 S.W.3d 382, 390–91 (Mo.App.W.D.2004).

#### October 28 Letter as an Acceptance

We address first Muilenburg's claim that the October 28 Letter did not

constitute an unconditional acceptance of the offer made in the August 25 Letter. To establish a valid contract, there must be both an offer and an unequivocal acceptance of that offer. *Crestwood Shops, L.L.C. v. Hilkene,* 197 S.W.3d 641, 649 (Mo.App. W.D.2006). The acceptance must be a "mirror image" of the offer; any purported acceptance that contains additional or different terms is a rejection of the original offer and is simply a non-binding counter-offer. *Id.* "A determination of whether an offer has been accepted depends upon what is actually said and done; it does not depend on the understanding or supposition of one of the parties." *Id.* Finally, although a request for a change in the terms of a proposed contract would constitute a rejection of the original offer, a mere inquiry as to whether the offeror will modify the terms of the contract does not result in a rejection of the offer. *Beck v. Shrum,* 18 S.W.3d 8, 10 (Mo.App. E.D.2000).

Muilenburg argues that the October 28 Letter contained new or different terms than those proposed in the August 25 Letter and was, therefore, a rejection of the August 25 Letter and a mere counter-offer. Specifically, Muilenburg points to three reasons why the October 28 Letter did not constitute an unconditional acceptance: 1) it requires Cherokee Rose to convey marketable title via warranty deed; 2) it requires Cherokee Rose to provide Muilenburg with a current commitment for title insurance; and 3) it contemplates the preparation and negotiation of additional contractual documents.

Initially, we note that although Muilenburg states the October 28 Letter "required" Cherokee Rose to provide a current commitment for title insurance, the actual language of the October 28 Letter stated that Muilenburg "would *like* [Cherokee Rose] to provide us with a current

commitment for title insurance." (emphasis added). As such, Muilenburg merely stated a preference for a title insurance commitment. Such an expressed preference did not constitute a rejection of Cherokee Rose's offer. *Id.*

Regarding the first stated reason, we find the case of *Haase v. Richmond,* 570 S.W.2d 341 (Mo.App.1978) to be instructive. In *Haase,* a lessee brought a suit against the lessor to enforce a provision within the lease which gave the lessee an option to purchase the property. *Id.* at 343. The lease stated that the lessee "may purchase at any time [the leased property] (during the) next five years for the purchase price of $22,000." *Id.* The lessee's attorney had sent the lessor a letter indicating that the lessee intended to exercise the option to purchase. *Id.* The letter read, in pertinent part, that the lessee "is exercising this option to purchase immediately, for the total purchase price of $22,000.00, in return for which we expect and are entitled to a full Warranty Deed and merchantable title of record to this land, free and clear of all incumbrances." *Id.*

On appeal, the lessor argued that the reference to the "entitle[ment] to a full Warranty Deed" in the letter sent by the lessee's attorney made the acceptance of the option to purchase conditional because it contained terms not included in the original offer. *Id.* at 344. The *Haase* court rejected the lessor's contention, noting that

[a]n agreement to sell and convey land is in legal effect an agreement to sell a title to the land, and in the absence of any provision in the contract indicating the character of the title provided for, the law implies an undertaking on the part of the vendor to make and convey a good or marketable title to the purchaser. A contract to sell and convey real

estate ordinarily requires a conveyance of the fee simple free and clear of all liens and encumbrances. Also, the obligation of the vendor in a contract for the sale of land, in the absence of any provision or stipulation to the contrary, is to convey a good or marketable title, and this obligation cannot be satisfied by an offer to convey an estate subject to outstanding encumbrances; in the absence of anything in the contract itself indicating that the vendee is to take title subject to encumbrances, or of anything to indicate waiver on the part of the purchaser of his right to an unencumbered title, the vendor, under his obligation to furnish a good or marketable title, is bound to furnish a title that is free from encumbrances.

*Id.* (internal citations omitted). We find the reasoning in *Haase* to be persuasive and determine that Muilenburg's requirement that Cherokee Rose convey marketable title via warranty deed did not make the October 28 Letter a counter-offer to—and therefore a rejection of—the August 25 Letter.

 Finally, Muilenburg does not cite this Court to any authority for the proposition that merely because the October 28 Letter contemplates the preparation or negotiation of further contractual documents, it cannot act as a "mirror image" acceptance of the offer contained in the August 25 Letter. If an appellant fails to cite to relevant authority or explain why none exists to support a claim of error, the point raised may properly be considered waived. *Shaw v. Raymond*, 196 S.W.3d 655, 660 (Mo.App. S.D.2006). We hold that the trial court did not err in finding that the October 28 Letter constituted an accep-

tance of the offer set forth in the August 25 Letter.

### Essential Terms of a Settlement Agreement

 Having found that Muilenburg accepted Cherokee Rose's offer, we now turn to Muilenburg's claim that the August 25 Letter did not contain the essential terms of a settlement agreement. Muilenburg's initial argument is that the August 25 Letter does not comply with the requirements of section 432.010,[1] the statute of frauds.

The statute of frauds is an affirmative defense; if it is not pleaded it is deemed to have been waived. Rule 55.08;[2] *Holman v. Holman*, 228 S.W.3d 628, 634 (Mo.App. S.D.2007). Because Muilenburg failed to raise the statute of frauds as a defense to Cherokee Rose's motion to enforce the settlement, it has waived the issue and cannot raise it for the first time here on appeal. *Smart Cemetery v. Bell Holdings, L.L.C.*, 186 S.W.3d 423, 427 (Mo.App. S.D. 2006).

Muilenburg also asserts, again without citation to any authority, that because the August 25 Letter contemplates and requires the drafting of further contractual documents, Cherokee Rose cannot show by clear and convincing evidence that a settlement agreement was reached. As previously noted, Muilenburg's failure to cite to any relevant authority for this proposition or explain why none exists constitutes an abandonment of this claim of error as well. *Shaw*, 196 S.W.3d at 660.

Point denied.

### Ambiguity in August 25 Letter

 When interpreting any contract, a court must follow the terms of the

---

1. Unless otherwise noted, all references to statutes are to RSMo (2000).

2. Unless otherwise noted, all references to rules are to Missouri Rules of Civil Procedure (2007).

contract as written if those terms are plain, unequivocal, and clear. *Malan Realty Investors, Inc. v. Harris*, 953 S.W.2d 624, 626–27 (Mo. banc 1997). Unless an ambiguity is present in the contract, a court will not look outside of the four corners of the contract to determine the intent of the parties. *Eisenberg v. Redd*, 38 S.W.3d 409, 411 (Mo. banc 2001). Only if a contract is determined to be ambiguous will a court then look to parol evidence in order to determine the parties' intent. *Monsanto Co. v. Garst Seed Co.*, 241 S.W.3d 401, 407 (Mo.App. E.D.2007). An ambiguity will be found to exist only if the contract's terms are susceptible to more than one meaning such that reasonable persons may honestly and fairly differ in the construction of its terms. *Eisenberg*, 38 S.W.3d at 411. "The issues of whether the parties entered into a contract and, if so, what terms are included in that contract, depend on what the parties actually said and did and not upon one party's own understanding." *Heritage Roofing, L.L.C. v. Fischer*, 164 S.W.3d 128, 134 (Mo.App. E.D.2005).

Muilenburg argues that the August 25 Letter was ambiguous because it is allegedly subject to multiple reasonable interpretations. Muilenburg claims that the August 25 Letter could be interpreted by reasonable persons as requiring Muilenburg to pay $75,000 to Cherokee Rose in exchange for the lots mentioned in the letter and for both parties to drop their respective claims or, alternatively, as not requiring Muilenburg to pay any money at all in exchange for the listed lots and the dropping of its claims against Cherokee Rose.

We do not find Muilenburg's alternative interpretation to be a reasonable one. The language in the August 25 Letter is clear on its face. It states that Cherokee Rose "will *sell* to [Muilenburg] Lots 7, 8, & 9 of Phase II of Lantern Hill, along with the adjoining five acres accessible through Lot 7 or 10th Ave., *for the below market price of $75,000.00.*" (emphasis added). The only reasonable interpretation of the quoted language is that, in return for $75,000.00, Cherokee Rose will sell the stated lots and five acres to Muilenburg.

■ Muilenburg argues that its alternative interpretation is a reasonable one based on the circumstances that existed prior to and at the time of the August 25 Letter. In so doing, Muilenburg asks us to look beyond the four corners of the contract. Parol evidence may not be used to create an ambiguity in what is an otherwise unambiguous contract and a contract does not become ambiguous merely because the parties do not agree on the meaning of its terms. *Whitehill v. Whitehill*, 218 S.W.3d 579, 585 (Mo.App. S.D. 2007).

■ Although Muilenburg does not use the term, Muilenburg seems to argue that even if the contract language is not patently ambiguous, there is a latent ambiguity present in the contract. A latent ambiguity will be found to exist when a contract on its face appears unambiguous, but some collateral matter makes the meaning uncertain. *Alack v. Vic Tanny International of Missouri, Inc.*, 923 S.W.2d 330, 337 (Mo. banc 1996). "A latent ambiguity may be one in which the description of the property is clear upon the face of the instrument, but it turns out that there is more than one estate to which the description applies; or it may be one where the property is imperfectly or in some respects erroneously described, so as not to refer with precision to any particular object." *Prestigiacamo v. American Equitable Assur. Co. of N.Y.*, 240 Mo.App. 839, 221 S.W.2d 217, 221 (1949). Another example of a latent ambiguity occurring in an otherwise unambiguous contract is the description of a

$10,000.00 promissory note in a contract when no $10,000.00 promissory note actually exists but a $50,000.00 note does. *See Royal Banks of Missouri v. Fridkin,* 819 S.W.2d 359, 362 (Mo. banc 1991). In such situations, courts will consider external matters in order to determine the true intent of the parties. *Id.*

No such contradiction exists between the terms in the settlement agreement at issue and any collateral matters surrounding the agreement. The agreement references several lots and Muilenburg presented no evidence indicating that any of the actual lots involved were different than as described. The agreement also references a release of claims against each party. Both parties had asserted claims against each other in the underlying case and Muilenburg points us to no contradiction between the agreement and the reality of those claims. Muilenburg directs us to no unique relationship between the parties that would cause them to draw from otherwise common words an uncommon meaning.

The trial court did not err in finding that a clear and unambiguous settlement agreement had been entered into by the parties and in enforcing its terms.

The judgment of the trial court is affirmed.

LYNCH, C.J., Concurs.

BARNEY, P.J., Concurs.