# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2335

_____

Thirty and 141, L.P.; Gravois Bluffs         *
A, L.L.C.; Gravois Bluffs I, L.L.C.,     *
                                              *
            Appellants,           *
                                              *     Appeal from the United States
    v.                                   *     District Court for the Eastern
                                              *     District of Missouri.
Lowe's Home Centers, Inc.,         *
                                              *
            Appellee.             *

_____

Submitted: March 12, 2009
Filed: May 11, 2009

_____

Before SMITH, GRUENDER and BENTON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Thirty and 141, L.P., Gravois Bluffs A, L.L.C., and Gravois Bluffs I, L.L.C. (collectively, "Thirty") sought reformation of a deed restriction they recorded pursuant to a lease with Lowe's Home Centers, Inc. ("Lowe's"), alleging mutual mistake. Both parties filed motions for summary judgment, and the district court granted Lowe's' motion. For the reasons discussed below, we vacate and remand.

## I.    BACKGROUND

On June 10, 1999, Lowe's and Thirty executed a lease agreement for Lowe's to occupy a portion of Thirty's property in an area known as Gravois Bluffs in Saint Louis County, Missouri. Thirty divided its Gravois Bluffs property into three planned shopping areas, which it called the North, South and East shopping centers.[1] Lowe's leased a portion of the North shopping center that it intended to use as a home improvement store.

The lease restricted Thirty from leasing certain portions of its remaining Gravois Bluffs property for use as a home improvement store. The lease required Thirty to record deed restrictions on the restricted property, stating that

> [Thirty] further agrees to immediately record a deed restriction on *each of the other proposed shopping centers* abutting Highway 141 setting forth a "no home improvement store" restriction all as more specifically set forth on Exhibit E-2.

(emphasis added). However, the lease did not identify or define "the other proposed shopping centers." Although all three proposed shopping centers abutted Highway 141, Exhibit E-2, which was titled "Legal Description of and Use Restrictions for the Proposed Shopping Centers Abutting Highway 141," only identified and described the South shopping center. Under the heading "Lease Area Shopping Center 'South'," Exhibit E-2 included a metes and bounds description of the South shopping center. The lease contained no description of the North or East shopping centers.

---

[1]The parties present conflicting evidence about whether Thirty used the terms North, South and East to describe the proposed shopping centers during the negotiation and drafting of the lease.

On August 24, 2000, Thirty recorded Declaration 90, the "no home improvement store" deed restriction drafted by Lowe's that is the subject of this appeal. Declaration 90 restricted the South shopping center and portions of Thirty's property known as Lot 7 and Lot 8.[2] At the time the parties executed the lease, Lots 7 and 8 had not been identified or "platted." However, by the time Declaration 90 was prepared and recorded, Lots 7 and 8 had been platted, with Lot 7 abutting the South shopping center and Lot 8 abutting the North shopping center, but neither lot abutting Highway 141.

Thirty asserted that the parties made a mutual mistake by restricting Lots 7 and 8 in Declaration 90 and filed a petition for reformation in the Circuit Court of Saint Louis County, Missouri, which Lowe's removed to federal court pursuant to 28 U.S.C. § 1332. Lowe's contended that it made no mistake in drafting Declaration 90. Both parties filed motions for summary judgment. The district court granted summary judgment to Lowe's, holding that the parties did not intend to exclude Lots 7 and 8 from the restricted property in the lease and, therefore, Declaration 90 contained no mutual mistake.

After the district court granted its motion for summary judgment, Lowe's filed a motion for attorneys' fees pursuant to Declaration 90, which provides:

> In the event Lowe's or [Thirty] brings suit to construe or enforce the terms hereof, or raises this Declaration as a defense in a suit brought by the other, the prevailing party is entitled to recover its attorneys' fees and expenses.

---

[2]Thirty also recorded Declaration 89, which restricts the North shopping center, and Declaration 1291, which restricts the East shopping center. Neither party challenges either Declaration 89 or Declaration 1291.

The district court granted Lowe's' motion. Thirty appeals, arguing that the district court erred in granting Lowe's' motions for summary judgment and for attorneys' fees and in denying Thirty's motion for summary judgment.

## II.    DISCUSSION

We review a district court's decision on cross-motions for summary judgment de novo. *J.E. Jones Constr. Co. v. Chubb & Sons, Inc.*, 486 F.3d 337, 340 (8th Cir. 2007). "Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.* The parties agree that we apply the substantive law of Missouri when considering Thirty's reformation claim. *See Oriental Trading Co. v. Firetti*, 236 F.3d 938, 944 (8th Cir. 2001).

Thirty argues that the district court erred in granting Lowe's' motion for summary judgment because genuine issues of material fact exist regarding the parties' alleged mutual mistake in drafting Declaration 90. To obtain reformation, Thirty "must show (1) a preexisting agreement of the parties to describe the property as requested, (2) a mistake, and (3) the mutuality of the mistake." *Brinkerhoff Land & Livestock Co. v. Doyle*, 778 S.W.2d 336, 338 (Mo. Ct. App. 1989). Thirty "bears a heavy burden and must show the existence of mistake by clear, cogent and convincing evidence." *Id.*

Although a "clear-and-convincing standard of proof should be taken into account in ruling on summary judgment motions[,] . . . [c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are [ ] functions" of the finder of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Thus, the appropriate "summary judgment inquiry as to whether a genuine issue" of material fact exists is "whether the evidence presented is such that

a [finder of fact] applying [the] evidentiary standard could reasonably find" that Thirty has proven the elements of reformation by clear and convincing evidence. *See id.*

In order to defeat Lowe's' summary judgment motion, Thirty must first show that a reasonable finder of fact could find by clear and convincing evidence that there was a preexisting agreement between the parties describing the property to be restricted that did not include restrictions on Lots 7 and 8. *See Brown v. Mickelson*, 220 S.W.3d 442, 449 (Mo. Ct. App. 2007) (noting that the party seeking reformation must show "a preexisting agreement between the parties to describe the [land] in accordance with the proposed reformation" (emphasis omitted)). Thirty contends that the lease is the preexisting agreement that demonstrates that the parties did not include Lots 7 and 8 in the "no home improvement store" restriction and, therefore, Declaration 90 should be reformed so that Lots 7 and 8 are not restricted.[3] Thirty argues that the parties agreed that Declaration 90 would effect their intention, as stated in the lease, to restrict only certain portions of Thirty's property.[4] *See Morris v. Brown*, 941 S.W.2d 835, 840-41 (Mo. Ct. App. 1997) (stating that in order to establish

---

[3]Although the district court required Thirty to present evidence establishing a genuine issue of material fact that the parties specifically intended to *exclude* Lots 7 and 8 from being restricted by the lease, the relevant question is whether the parties intended to *include* the property later identified as Lots 7 and 8 in the property to be restricted under the lease. *See Lake Saint Louis Cmty. Ass'n v. Ravenwood Props., Ltd.*, 746 S.W.2d 642, 644 (Mo. Ct. App. 1988) ("[R]estrictive covenants are narrowly construed and are not extended by implication to include anything not clearly expressed in them. If there is substantial doubt of their meaning, such doubt should be resolved against the restriction and in favor of the free use of property." (internal citation omitted)).

[4]Lowe's asserts that Declaration 90 is a separate agreement from the lease and that it is enforceable independent of the lease. However, this argument is refuted by Declaration 90 itself, which states that Thirty is "required to record this Declaration" pursuant to "the terms of the Lease." Moreover, witnesses from both Lowe's and Thirty testified that the parties intended for Declaration 90 to conform to the terms of the lease.

a preexisting agreement, "it is sufficient that the parties agreed to accomplish a particular object by the instrument to be executed and that such instrument as executed is insufficient to effect their intention"). Thus, we must examine the lease to determine what property it restricts in order then to decide whether Declaration 90 restricts the same property.

We "must follow the terms of the contract as written if those terms are plain, unequivocal, and clear." *Muilenburg, Inc. v. Cherokee Rose Design & Build, L.L.C.*, 250 S.W.3d 848, 853-54 (Mo. Ct. App. 2008). We may examine parol evidence only if we determine that the contract is ambiguous, which we will find "only if the contract's terms are susceptible to more than one meaning such that reasonable persons may honestly and fairly differ in the construction of its terms." *Id.* at 854.

The lease does not mention Lots 7 and 8, which is not surprising because Lots 7 and 8 were not platted at the time the parties executed the lease. When describing the property to be restricted, the lease simply states that Thirty will restrict "each of the other proposed shopping centers abutting Highway 141 . . . as more specifically set forth on Exhibit E-2." Exhibit E-2 identifies and describes only the South shopping center and does not describe Lots 7 or 8. On the other hand, the lease contemplates restricting multiple shopping centers, as evidenced by its use of the phrase "each of the other proposed shopping centers." Although Exhibit E-2 describes only the South shopping center, its title, "Legal Description of and Use Restrictions for the Proposed Shopping Centers Abutting Highway 141," like the body of the lease, appears to contemplate restricting multiple shopping centers. In addition, Exhibit E-2 states that the no home improvement store restriction will not apply to a "larger general business," such as a Target store, "[w]ith respect to the proposed shopping center abutting the east side of Highway 141." This statement implies that Exhibit E-2 otherwise restricts the East shopping center, which is the only shopping center that abuts the east side of Highway 141. Thus, Exhibit E-2's use of the plural "proposed shopping centers" and its reference to the East shopping center, along with

-6-

the lease's general references to "each of the other proposed shopping centers abutting Highway 141," are inconsistent with the proposition that the lease restricts only the South shopping center. As Lowe's argues, these discrepancies could mean that even though Exhibit E-2 identifies and describes only the South shopping center, the lease restricts "each of the other proposed shopping centers abutting Highway 141," which includes Lots 7 and 8. The lease does not define "proposed shopping centers." Although Lots 7 and 8 are not part of the current shopping centers abutting Highway 141, Lots 7 and 8 easily could have been considered part of the proposed shopping centers at the time the lease was signed because the property had not yet been platted.[5] Therefore, we conclude that the lease is ambiguous about whether the parties intended to include Lots 7 and 8 in the restricted property, and we may consider parol evidence to interpret the lease. *See id.*

Thirty presented evidence that the parties never intended to restrict Lots 7 and 8. First, Thirty offered deposition testimony from a surveyor that Exhibit E-2, which includes a metes and bounds description of the South shopping center, did not include Lots 7 and 8 as they were later platted. Moreover, Thirty's surveyor testified in his deposition that Exhibit E-2 states that the South shopping center is 61.81 acres in total, while Lots 7 and 8 alone encompass 68 acres. Thirty also points to the deposition testimony of one of the attorneys for Lowe's who stated that Lots 7 and 8 "probably" could not be considered to abut Highway 141. Further, one of Thirty's lawyers who was involved in the negotiation of the lease explained in his deposition that Thirty had no plans to develop Lots 7 and 8 for retail use at the time of the execution of the lease, and, therefore, Lots 7 and 8 would not have been included as restricted property in the lease. Finally, one of Thirty's lawyers stated that the parties never discussed Lots 7 and 8 during the drafting of the lease, which is again not surprising because the lots had not yet been platted.

---

[5]Lots 7 and 8 are currently separated from the South shopping center and from each other by two roads, but the record is unclear about whether the roads existed at the time the parties signed the lease.

Lowe's contends that the lease only conceptually described the property to be restricted and that the parties understood that the restricted property would be specified later because the property had not been platted at the time the lease was executed. Lowe's notes that Thirty ultimately filed deed restrictions on the North and East shopping centers, even though Exhibit E-2 only describes the South shopping center. Therefore, Lowe's argues that Thirty did not believe that Exhibit E-2 described all of the property the parties intended to restrict, which supports Lowe's' argument that the lease's use of the plural "proposed shopping centers" and failure to define "proposed shopping centers" means that the lease restricted more than just the South shopping center. Moreover, one of the attorneys for Lowe's involved in the drafting of the lease testified that the parties intended to restrict all of the property owned by Thirty pursuant to Lowe's' usual policy; however, he was uncertain why Lowe's did not include broad language in the lease to restrict all property owned or later acquired by Thirty in the relevant area.

Although Lowe's presents evidence supporting a contrary interpretation of the lease, given the evidence presented by Thirty, we conclude that there are genuine issues of material fact such that a reasonable finder of fact could find by clear and convincing evidence that the lease was a preexisting agreement between the parties describing the property to be restricted and that the parties did not intend to include Lots 7 and 8 in the restricted property under the lease. *Cf. Chadwick v. Chadwick*, 260 S.W.3d 421, 425 (Mo. Ct. App. 2008) (explaining that the intent of the parties to an ambiguous contract is a question of fact).

Second, to defeat Lowe's' motion for summary judgment, Thirty must also show that a reasonable finder of fact could find by clear and convincing evidence that the parties made a mutual mistake in Declaration 90 by restricting Lots 7 and 8.[6] "[A]

[6]Neither party argues that the lease itself contains a mutual mistake. Thus, our focus is solely on whether Declaration 90 contains a mutual mistake.

mutual mistake occurs when both parties, at the time of contracting, share a misconception about a basic assumption or vital fact upon which they based their bargain." *Alea London Ltd. v. Bono-Soltysiak Enters.*, 186 S.W.3d 403, 415 (Mo. Ct. App. 2006). A mutual mistake may exist even when one party claims there was no mistake if the disputed document contradicts a preexisting agreement. *King v. Factory Direct, Inc.*, 639 S.W.2d 627, 636 (Mo. Ct. App. 1982). "[W]hether parties are laboring under a mutual mistake is normally a question of fact." *Alea*, 186 S.W.3d at 415. "Parol evidence is admissible to show that because of mutual mistake the [disputed document] did not reflect the intentions of the parties." *Mickelson*, 220 S.W.3d at 448.

Thirty contends that because the parties did not intend to restrict Lots 7 and 8 in the lease, the parties made a mutual mistake by including Lots 7 and 8 in Declaration 90. *See King*, 639 S.W.2d at 636 (explaining that a mutual mistake occurs when the parties "intended to say one thing [through the preexisting agreement] and by mistake expressed another and different thing" in the contested document). Thirty presented the deposition testimony of one of its lawyers involved in preparing Declaration 90 who explained that both parties intended for Declaration 90 to correspond to the terms of the lease. Indeed, Declaration 90 states that Thirty agreed to certain restrictions "under the terms of the Lease." Thirty also highlights the deposition testimony of one of the attorneys for Lowe's who drafted Declaration 90. The attorney admitted that the parties intended for Declaration 90 to correspond to the terms of the lease but that, when drafting Declaration 90, he consulted Plat Two, a document setting forth all of the property owned by Thirty on the west side of Highway 141, including the South shopping center and Lots 7 and 8, instead of the lease.

Although the attorneys for Lowe's testified that Lowe's made no mistake by restricting Lots 7 and 8 in Declaration 90, that does not necessarily preclude a finding of mutual mistake. *See id.* at 636 (holding that the defendant's assertion that it made

no mistake in the legal description of the land it received "does not prevent reformation where it appears a mutual mistake is present"). Lowe's further asserts that Thirty reviewed multiple drafts of Declaration 90 before they signed and recorded the final version and that Thirty should have noticed that Lots 7 and 8 were clearly restricted by it. However, negligence in failing to notice a mistake in a contract does not bar reformation. *See Kopff v. Econ. Radiator Serv.*, 838 S.W.2d 449, 454 (Mo. Ct. App. 1992). We conclude that Thirty's evidence that Declaration 90 conflicts with the lease—the preexisting agreement between the parties—is evidence from which a reasonable fact finder could find by clear and convincing evidence that the parties made a mutual mistake in the execution of Declaration 90.

While we express no opinion on the ultimate outcome of a trial, Thirty's evidence at least creates a genuine issue of material fact such that a reasonable fact finder, after making credibility determinations and weighing the evidence, could find by clear and convincing evidence that the lease was a preexisting agreement describing the property that the parties intended to restrict and that the parties made a mutual mistake by including Lots 7 and 8 in Declaration 90. Accordingly, the district court erred in granting Lowe's motion for summary judgment.[7]

Thirty further argues that the district court erred in granting Lowe's' motion for attorneys' fees because Lowe's did not plead its request for attorneys' fees pursuant to Federal Rule of Civil Procedure 54(d)(2)(A). Declaration 90 allows the "prevailing party" to recover attorneys' fees and expenses. Because we vacate the district court's grant of summary judgment to Lowe's, Lowe's is no longer the "prevailing party." Therefore, we reverse the district court's grant of Lowe's' motion for attorneys' fees, and we do not reach Thirty's argument regarding Rule 54(d)(2)(A).

---

[7]Because genuine issues of material fact exist as to each element of reformation as set forth above, the district court did not err in denying Thirty's motion for summary judgment.

## III.   CONCLUSION

For the foregoing reasons, we vacate the summary judgment order and remand to the district court for further proceedings consistent with this opinion.

_____